Ellsworth N. Lawrence, J.
This motion is to examine Grand Jury minutes and for other relief, the basic purpose of which is, of course, to enable the defendant to move to dismiss the indictment.
The defendant stands indicted for the first degree murder of his wife at Massena, St. Lawrence County, on June 7, 1966.
We should keep in mind here that Miranda v. Arizona (384 U. S. 436) and companion cases were not decided until June 13.
On the day of the alleged murder the defendant was brought before Police Justice Edward A. La Yabnway charged in an information and deposition with murder in the first degree. In the exercise of discretion, the Police Justice on that day ordered the defendant to be examined to determine the question of his mental condition, under section 870 of the Code of Criminal Procedure.
Such examination took place at St. Lawrence State Hospital on June 9. The designated psychiatrists found the defendant to be in such a state of idiocy, imbecility or insanity as to be incapable of understanding the charge against him or of making his defense. The court having been notified of this finding, the District Attorney and counsel for the defense were given an opportunity to be heard thereon (Code Grim. Pro., § 872).
Under the assigned counsel plan effective in St. Lawrence County, Sidney H. Kitay and Boss E. Brown were appointed on June 13 to represent the defendant.
A hearing on the question of mental condition was held by Justice La Yarn way on June 23. At such hearing, at defense request, both of the designated psychiatrists testified. Not only did they testify to the same effect as set forth in their findings as to his condition on June 9, but they expressed the opinion that he had been in the same condition for some months prior thereto and at the time of the alleged crime on June 7.
At the conclusion of that hearing the defendant was ordered committed under section 872. He has since been in Matte awan State Hospital, where he now remains.
At the June 23 hearing, before the psychiatrists had testified, defense counsel had demanded a preliminary hearing (Code Grim. Pro., § 190 et seq.). Their position was that it did not appear that a crime had been properly charged against the defendant and that the information was defective. The Magistrate denied this application and proceeded as above indicated.
*931 The denial of such application is now urged as one of the grounds for granting a motion to examine the Grand Jury minutes.
I believe this defense position is unsound. Justice La Vabitway had jurisdiction of the defendant on June 7. The defendant was before him charged with a felony. So long as the Magistrate then had reasonable ground to believe that the defendant was in that state, the Magistrate had the discretion to order the psychiatric examination. Such reasonable ground for belief could be sufficiently shown either from the papers before him including the information and any deposition or from the appearance, physical or otherwise, of the defendant in court, as well as by common-law proof. These remarks are necessarily parenthetical as no question of the reasonableness of the ground for the Magistrate’s belief has been raised.
The issue then, before the Magistrate on June 23, was whether or not the defendant was in such a mental state as to require commitment, not whether he should be held for the Grand Jury. The Magistrate was not then required to hold an examination to determine whether or not a crime had been committed or whether or not there was sufficient cause to believe the defendant was guilty thereof (Code Grim. Pro., § 208).
Nor was this the time to test the sufficiency of the information or of any deposition so long as the defendant was charged with the crime.
If a contrary finding had been made at the psychiatric examination, the proceedings would have been resumed as if no examination had been ordered. (Code Grim. Pro., § 874.) Issues regarding the sufficiency of the accusation could have then been raised.
But where the defendant is found to be in such a condition, the Magistrate so finding is required to commit him, whereupon all proceedings before the Magistrate terminate. (Code Grim. Pro., § 872, subd. 2.) If the District Attorney had elected to reopen the proceedings before the Magistrate within the six-month period provided by the last-mentioned section, the defense would then have had the right to raise the same questions they sought to raise on June 23.
The denial by the Magistrate of the right to a preliminary hearing under section 190 is therefore not a proper basis for allowing examination of Grand Jury minutes. In this respect the case is exactly like one where a Grand Jury indicts without a preliminary hearing or during the adjournment of a preliminary hearing.
*932 But the District Attorney here elected to pursue the alternative procedure available under subdivision 2 of section 872. He submitted the case to the September 1966 Grand Jury. He had a right to. No order was needed. This indictment resulted.
Defense counsel, on the opening day of the Grand Jury session, addressed a letter to the foreman of the Grand Jury with copy to the District Attorney and the presiding Justice. In that letter they pointed out that while it was not possible for the defendant to appear before the Grand Jury in person (see Code Grim. Pro., § 250), there was evidence within the “ reach ” of the Grand Jury as to the defendant’s mental competence to form an intent to commit the crime charged. They named the psychiatrists and stated that both had testified that the defendant ‘ ‘ on the day of his apprehension was unable to understand the nature of the charge against him nor to assist in his defense. ’ ’ They suggested in accordance with subdivision 1 of section 250 that the Grand Jury should order such evidence produced and should weigh it with the other evidence.
The defense position now is that the District Attorney has a constitutional responsibility to disclose the “ favorable ” information to the Grand Jury on the theory that he would be required to do so in a criminal trial and that the Grand Jury should have heard this evidence.
We take up first the question of the District Attorney’s obligation to disclose evidence “ favorable ” to the defendant. Such obligation stems from the quasi-judicial nature of the District Attorney’s position. The test here, I believe, is that a District Attorney should not conceal, that he should not fail to disclose evidence or information which might affect the result.
Partly this would seem to involve the question of his disclosure of pertinent facts to the defendant or his counsel. Where the defense are already aware of the availability of ‘1 favorable ’ ’ evidence, the District Attorney has no further obligation to them.
The District Attorney’s obligation would also seem to be to disclose “ favorable ” evidence to a Grand Jury as to a Trial Jury. Here it cannot be said that the Grand Jury was kept from knowing about the available testimony in view of the communication they received from the defense.
Thus far, the District Attorney seems to have done all that was required. But a further problem is apparent.
In his answering affidavit, the Assistant District Attorney, who presented the case to the Grand Jury, states that the defense letter was, in fact, read to the Grand Jury and that the matters raised in such letter were “ thoroughly explored ” by the Grand *933 Jury, that the meaning of section 250 was explained to the Grand Jury and that thereafter the Grand Jury “by secret vote, voted not to hear Drs. Brown and Dollar (the designated psychiatrists) in person.”
A Grand Jury has the right to seek and obtain advice from the District Attorney (Code Grim. Pro., § 255).
A District Attorney may well feel as Mr. Power does here, that his explanation of section 250 plus the “ thorough exploration ” of the matters in the defense letter not only met the obligation of the District Attorney to give appropriate advice, but that the Grand Jury vote relieved his office from presenting the evidence in question.
There are instances in which a court, after personal examination of the Grand Jury minutes, might very well agree with such a position.
Perhaps I could do so here. But this is not a question of Grand Jury evidence. It is a question of the propriety and sufficiency of legal advice.
Here I am reminded of Judge Fuld’s famous quotation in People v. Rosario (9 N Y 2d 286, 290) to the effect that “ single-minded counsel for the accused ’ ’ are in a far better position to evaluate in a similar situation, than a Trial Judge could be.
Granted that a Grand Jury has the statutory right under section 250 to determine whether it should hear evidence in explanation, the defense can hardly be expected to be satisfied by the District Attorney’s statement that the matters were thoroughly explored. If the defense does not have an opportunity to examine the Grand Jury minutes now, they would certainly raise this question whenever the case reached an appellate court. If such court should not then be satisfied with the “ thorough exploration ” or with this Grand Jury procedure, the indictment might then be dismissed. It would, therefore, seem preferable to enable the defense to see that part of the minutes now, in advance of trial.
I do not mean now to indicate any ruling I might make if the defense elects to raise some point in connection with this aspect of the matter. It is sufficient merely to say that the defense ought now to have the information.
This consideration of itself would persuade me to grant the motion. But there are added reasons for doing so. These arise from the defendant’s mental condition and the refusal of the Grand Jury to hear evidence on the subject.
Two questions, then, remain.
The first is whether the Grand Jury should have heard evidence of the defendant’s mental condition at the time of the *934 alleged commission of the crime, upon the question of guilt or innocence.
The second is whether they should have heard such evidence upon the question of the admissibility of any statement supposed to have been made by the defendant.
Involved in the first question is that of mental competence to form an intent. Intent to kill is, of course, an element of the crime of murder in the first degree (Penal Law, § 1044).
No matter what the nature of the crime, “ a person is not criminally responsible for conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity to know or appreciate either: (a) The nature and consequence of such conduct; or (b) That such conduct was wrong.” (Penal Law, § 1120.)
Normally, the question of a defendant’s mental condition at the time of commission of a crime would never be the subject of Grand Jury proof. This would seem to be so because “ a person is presumed to. be responsible for his acts. The burden of proving that he is irresponsible is upon the accused person ” (Penal Law, § 815). While the statute so provides, this is really not a question of burden of proof, but the burden of coming forward with evidence of insanity. Where the defendant comes forward with such evidence, the People are required to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the crime. (Richardson, Evidence [9th ed.], § 62.)
This situation can ordinarily develop only on the trial of an indictment, where the defendant comes forward with some proof on the issue of sanity under section 1120 of the Penal Law.
While the cases have, long held that proof of insanity may be offered under a plea of not guilty, a defendant can now only offer such proof where he has served written notice of his purpose to do so. (Code Crim. Pro., § 336.)
I suppose this is so because such proof is in the nature of a plea of confession and avoidance.
With this background, should the Grand Jury have heard evidence of the defendant’s mental condition on June 71 Certainly such evidence as was available was “ within their reach ” (Code Crim. Pro., § 250, subd. 1), for both psychiatrists reside in St. Lawrence County.
But as the People point out, there is a clear distinction between a mental defect or disease excluding responsibility (Penal Law, § 1120) and an incapacity of understanding the charge or of making a defense (Code Crim. Pro., § 870). The *935 distinction is pointed ont in Paperno and Goldstein, Criminal Procedure in New York (§ 249).
Here, on analysis, I think it may well be argued that the Grand Jury had the right to choose. They were not bound to hear evidence for the defendant. They need not hear evidence of any witness on his behalf unless they so desire. (Code Crim. Pro., § 250, subds. 1, 2.) Did they have reason to believe that the other evidence would explain away the charge? If they did, they should have ordered such evidence produced. But it is also arguable that they did not have such reason.
As Judge Freschi pointed out in People v. Blair (17 Misc 2d 265) the Grand Jury sessions must not be held to be a judicial examination of the issue between parties, that the Grand Jury inquiry should not be converted into a regular trial. He says (p. 272) “ let it be remembered that the right [of the defendant] to testify under this statute is personal and individual, unless the Grand Jury wish to hear other evidence. ’ ’ (See, also, People v. Pryor, 11 N. Y. S. 2d 393, affd. 283 N. Y. 623.)
In People v. Gibson (15 Misc 2d 642) an almost identical situation arose. The Grand Jury, by vote, decided not to hear the evidence of a psychiatrist, after receiving a letter from defense counsel. The refusal of the Grand Jury to hear such evidence was held not to require dismissal of the indictment.
I do not, therefore, feel that the refusal of the Grand Jury to hear evidence of defendant’s mental condition at the time of commission of the crime, whether such evidence would relate to his competency to form an intent, or whether it would relate to the question of his criminal responsibility for crime, would justify dismissal of the indictment or examination of the Grand Jury minutes.
But in addition to what was said earlier on the question of the thoroughness of the Grand Jury exploration of the matter, I believe there is an added reason for allowing such examination, resulting from the decision in Miranda v. Arizona (384 U. S. 436, supra).
It is the defense position that the case against the defendant is based on an alleged statement and/or admission made by the defendant to a police officer during custodial interrogation which, as made while the defendant was not mentally competent, was so made contrary to the procedural safeguards required in the protection of his privilege against self incrimination, and that thus such statement could not be legally used against him. This amounts to a claim that there was a violation of the statute (Code Crim. Pro., § 249) providing that the Grand Jury can receive “none but legal evidence.” can
*936 Indeed, in logic, the defense position would seem to go further for it would follow, under the “ fruits of the poisoned tree ” doctrine, that any information derived from an illegally obtained confession or admission would not be legal evidence either.
The question of mental competency may thus be not only material on the issue of admissibility of a statement supposedly made by the defendant, but it may be the key to admissibility itself.
Certainly if not admissible, this evidence would be subject to a motion to suppress (Code Grim. Pro., § 813-g). If not legal, the Grand Jury should not have received it.
In order then, for the Grand Jury to have considered any such statement by the defendant, they must first find that it was made consciously and intelligently.
It is clear that this is what the Supreme Court has in mind in Miranda.
Having stated the procedural safeguards preliminarily required before such a statement can be used, the United States Supreme Court adds that such can be waived if the waiver is made “voluntarily, knowingly and intelligently” (Miranda, p. 444). Again (p. 468), they say “the warning [to remain silent] is needed simply to make them [i.e., defendants] aware of it.” A similar warning (that what is said may be used against him) is said to be “ needed to make him aware not only of the privilege, but also of the consequences of foregoing it” (p. 469). Still later appears the following: “ if the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination ” (p. 475).
Obviously the intention of the Supreme Court as stated or as implied in these quotations is that a defendant must be warned to the end that he understands the warnings, understands the consequences of making any statement and understands that it can be used against him. The purpose of all this is to enable a suspect to intelligently rationalize, for a man unable to understand the warning or the consequences must also be unable to understand what he does in waiving the privilege.
The case of Westbrook v. Arizona (384 U. S. 150) furnishes us with further information as to the Supreme Court’s analysis of the matter. In that case there had been an Arizona hearing upon the defendant’s competence to stand trial. In spite of that, the Supreme Court ordered a further hearing upon the issue of his competence to waive the right to assistance of counsel and to proceed, as he did, to conduct his own defense.
*937 From these cases it becomes clear that the existence of some degree of intelligence or understanding is a prerequisite to the admissibility of a statement made by a defendant during custodial interrogation.
While the presumption of responsibility (Code Crim. Pro., § 815) will, in most cases, eliminate the necessity of proof on that issue, and will thus allow the introduction into evidence of such statements where other procedural safeguards are observed, it seems equally clear that where mental competence is in issue, the issue must be resolved in favor of the People before the statement can be admitted as legal evidence.
I have said that some degree of intelligence or understanding is a prerequisite. It is not necessary here to determine what degree is needed.
We have, of course, in New York, two statutory tests, those set forth on the one hand in section 1120 of the Penal Law and on the other sections 870 and 658 of the Code of Criminal Procedure.
In logic it would seem that the latter test is closer akin to the present state of facts than is the former. But, in view of Westbrook, there may be another. It may be held proper to apply our old rules regarding confessions (cf. Code Crim. Pro., § 395) to such waivers, and to hold that they must be made voluntarily, consciously and intelligently. Indeed it is not impossible that some form of a Huntley hearing (People v. Huntley, 15 N Y 2d 72) might be held in such cases.
The problem of what test should be used in such a case will probably continue until the Supreme Court has spoken further. That this, like other problems created by Miranda, is of concern to those engaged in the criminal field, is well shown not only by comments from the Bench and Bar as well as police officials, but also from recent publications. An example is found in the October 21 issue of Life magazine (vol. 61, No. 17, p. 34 et seq.). The following quotation (p. 41) points out the problem: “ and what standards are policemen to use in determining a man’s comprehension? ”
Until the Supreme Court shall have laid down further guidelines, a lower court can only hope to discover such standards as will later meet appellate approval.
As we deal here merely with the question of examination of Grand Jury minutes, I am not required presently to determine whether the indictment should be dismissed.
I am not unaware that this court has inherent power to grant the implied motion to dismiss an indictment on a motion to examine. The question here to be raised seems, however, *938 sufficiently novel at this stage to go only so far as to grant the motion to examine.
Little more need he added. It seems to me, where the psychiatrists’ finding is that on June 9 the defendant was incapable of understanding the charge against him or of making his defense, together with the expressed opinions of the psychiatrists that his condition was the same both before that date and later, that these facts may very well make it necessary for the People to prove, before offering in evidence any statement supposed to have been made by the defendant during custodial interrogation, that he had sufficient mental competency to be capable of understanding the warnings required by Miranda as a procedural safeguard of the privilege against self incrimination.
Because it is basic that he must understand the warnings in order for the confession or admission to constitute legal evidence, because such evidence would not be admissible at a trial unless that issue was resolved against him, because such evidence could be suppressed if shown to be illegal, it must follow that where the issue is present, the Grand Jury cannot receive the evidence until its legality has been preliminarily established.
Under these circumstances, the defense should now have the right to examine the Grand Jury minutes. The situation is not unlike that in People v. Colletti (42 Misc 2d 158), which followed the reversal in People v. Donovan (13 N Y 2d 148).
The motion to examine the Grand Jury minutes is therefore granted.
The defendant being indigent, unless the District Attorney furnishes the minutes to the defense free of charge, this court will order the cost thereof paid by the County of St. Lawrence.
The questions of whether a motion to dismiss, if made, would be granted or whether, if granted, there would be an order to resubmit (see Code Orim. Pro., § 317), are questions not yet decided. This is not to imply how they would be.
It goes without saying that I have examined the minutes.
This case is adjourned to the St. Lawrence County Courthouse at Canton on November 30, 1966 for further proceedings.