Lawrence J. Tonetti, J.
The defendant, an attorney, indicted for criminal solicitation in the second degree, brings this motion for omnibus relief. This court having read the Grand Jury minutes and listened to recorded conversations determines this motion as hereinafter indicated.
THE facts
During the course of the investigation into the nursing *841 home industry in Bronx County the Special Prosecutor developed incriminating information concerning the nursing home operator Chaim Zelmanowicz. Mr. Zelmanowicz, in an effort to minimize his own potential liability and that of his wife, agreed to co-operate with the Special Prosecutor by offering information. Zelmanowicz maintained that in the course of the establishment of the Split Rock Home between 1967 and 1969, Mr. Karassik, then his attorney, solicited and received $5,000 in cash from Zelmanowicz. The representation made was that the money would be used in order to expedite approval for the application then pending before the Health and Hospital Planning Council of Southern New York, Inc.
As prosecution of this alleged bribe would be time-barred unless extended by the involvement of a public official (CPL 30.10, subd 3, par [b]), the Special Prosecutor determined to see if this type of a situation was still existent. To this effect, Zelmanowicz was wired and a meeting arranged with the defendant. At this meeting Zelmanowicz maintained that he wanted to extend his nursing home facilities and asked the defendant if the same arrangements could be made as had transpired in the past. Although the defendant makes some statements which may be construed as tacit admissions of the 1967 bribe he is unequivocal in telling Zelmanowicz that no possibility exists for any present dealings of this nature and that all nursing home determinations were now based on bed need.
At this point the Special Prosecutor knew that the original transaction was time-barred, as to the defendant, and that Karassik had ruled out any potential future arrangements. He did not know, however, if the involvement of a public servant would extend the period for a prosecution. Rather than subpoena Karassik under immunity, however, he chose to send Zelmanowicz back to Karassik’s office.
On this instance Zelmanowicz was provided with a subpoena duces tecum commanding him to appear the following day with the records for the establishment of the Split Rock Nursing Home. While it is true that Zelmanowicz was under investigation by the Grand Jury and thus subject to subpoena, in fact, he was a co-operating witness and the subpoena was a subterfuge used to create the impression that he was being compelled to testify and needed immediate legal advice. During the meeting Karassik allegedly tells Zelmanowicz not to *842 mention the $5,000 during his Grand Jury appearance. The criminal solicitation is allegedly this importuning of perjury in the first degree before the Grand Jury. It must further be noted that at this meeting Zelmanowicz asked Karassik to whom the money was paid and was told not to ask.
I SUFFICIENCY OF ENABLING LETTERS
The defendant challenges the authority of the Special Prosecutor alleging that the enabling letters of the Commissioners of Health and Social Services lacked the requisite specificity to trigger the grant of authority by the Attorney-General. This court feels, however, that this issue was resolved by the Appellate Division in L & S Hosp. & Institutional Supplies Co. v Hynes (51 AD2d 515). The court there stated: "The Deputy Attorney-General has authority to appear before the grand jury (Steinman v Nadjari, 49 AD2d 456) and to issue subpoenas on its behalf (People v Tomasello, 21 NY2d 143 * * *). The powers conferred on the Attorney-General’s office by subdivision 3 of section 63 of the Executive Law were properly activated by the requests from the State Commissioners of Health and of Social Services”.
In an analogous case, dealing with subdivision 8 of section 63 of the Executive Law the Court of Appeals also approved the enabling letters (Matter of Sigety v Hynes, 38 NY2d 260).
II JURISDICTION OVER THIS OFFENSE
The jurisdictional basis for the instant indictment derives from subdivision 3 of section 63 of the Executive Law. This section (subd 3) states that the Attorney-General shall: "Upon request of * * * the head of any * * * department, authority, division or agency of the state, investigate the alleged commission of any indictable offense or offenses in violation of the law which the officer making the request is especially required to execute or in relation to any matters connected with such department, and to prosecute the person or persons believed to have committed the same and any crime or offense arising out of such investigation or prosecution or both, including but not limited to appearing before and presenting all such matters to a grand jury.”
Pursuant to letters requesting an investigation submitted by the Commissioners of Health and Social Services, the Attorney-General, in a letter dated January 10, 1975, specifically *843 delegated to the Special Prosecutor the "authority to perform as my Deputy any and all functions and to exercise any and all powers conferred upon the Attorney General.” Thus, the sum of the Special Prosecutor’s powers entail investigation and prosecution of indictable offenses in the nursing home industry and any offenses arising from such investigation. What constitutes offenses in the nursing home industry can be further defined by reference to the activating letters of the commissioners as "offenses in violation of the Public Health Law or in relation to any matter connected with the New York State Department of Health” and "offenses in violation of the Social Services Law or in relation to any matters connected with the New York State Department of Social Services”.
The investigation of Karassik commenced with the information provided by Zelmanowicz that $5,000 had been used to expedite approval of a nursing home establishment. The investigation of this type of activity is clearly within the purview of the Special Prosecutor grant of authority. He was charged with the investigation and prosecution of any offenses in violation of the Public Health Law or in relation to the State Health Department. One of the principal tasks of the Department of Health, and its subordinate bodies, the Public Health Council and the State and Regional Planning Council, is to supervise the approval of health facilities (see Public Health Law, § 2801-a et seq.). As such is the case, an investigation of the proprieties of the approval of a facility is without doubt a matter connected with the New York State Department of Health and thus a valid subject for investigation by the nursing home prosecutor.
At the time Zelmanowicz’s information came to the attention of the Special Prosecutor it was apparent that the Statute of Limitations would bar an indictment against either Karassik or Zelmanowicz. This fact, however, does not preclude a continuation of the investigation for two reasons. First, the investigation could lead to evidence of more current similar conduct which could be the subject of an indictment (United States v Cohn, 452 F2d 881). Second, although a valid indictment could not be returned against Zelmanowicz or Karassik, it was evident that if the alleged bribe was passed on to a public servant he might still be subject to criminal liability (GPL 30.10, subd 3, par [b]). The fact that the Criminal Procedure Law, incorporating the above section, was enacted *844 subsequent to the alleged misconduct would not be of consequence as the Legislature may extend the applicable period at any time before it vests (People v Pfitzmayer, 72 Misc 2d 739; People v Glowa, 87 Misc 2d 471).
The first time Zelmanowicz was sent to Karassik’s office the Special Prosecutor’s principal motivation was to determine if the conduct which Zelmanowicz had related was continuing. To accomplish this end, a scheme was devised whereby Zelmanowicz would offer money to obtain an expansion of the facilities at one of his homes. This plan was rejected by Karassik who unequivocally stated that nursing home extensions were now based soley on bed need. There are, however, tacit admissions of the orginal transfer of $5,000 contained within the recorded conversation.
The second visit to Karassik’s office is more difficult to justify. At this point the Special Prosecutor knew that he could not prosecute Karassik for the original alleged bribery and that any future criminality in this area had been ruled out by Karassik himself. However, the Special Prosecutor still had a legitimate interest in deterimining the possible involvement of a public servant who could be prosecuted. Also, it must be remembered that the Special Prosecutor’s jurisdiction extends to crimes arising out of his investigation (Executive Law, § 63, subd 3). Here, as there was a valid reason for investigating the alleged bribery, if Karassik’s actions can be construed as an attempt to impede that investigation then the Special Prosecutor would have jurisdiction to prosecute that attempt as a crime arising from his investigation. While this court may question the Special Prosecutor’s sense of priorities in proceeding to indict Karassik for what is at best a misdemeanor and quite possibly a violation, instead of subpoenaing him and attempting to ascertain what knowledge he had of the involvement of public officials, it is for the prosecutor and not this court to determine what path an investigation should follow. It cannot be said that the Special Prosecutor exceeded his jurisdiction in presenting this particular crime.
TIT SUFFICIENCY OF THE GRAND JURY EVIDENCE AND INSTRUCTION
This court has read the Grand Jury minutes and finds sufficient evidence to support an indictment (CPL 210.20, subd 1, par [b]). Further, the Grand Jury was given adequate *845 recorded instructions on the law to determine if an indictment was warranted (CPL 190.25, subd 6).
The defendant contends that as he was an accomplice of Zelmanowicz, the latter’s testimony required corroboration (CPL 60.22). While he may have been an accomplice in the original bribery as an agent of the State, he was not an accomplice to the solicitation of perjury (People v Bennett, 182 App Div 871, affd 224 NY 594; People v Swift, 161 Misc 851, affd 251 App Div 808; People v Seligman, 35 AD2d 591). The issue of whether corroboration exists as to the fact that the $5,000 allegedly given to Karassik was passed on to a public servant is not relevant as Karassik is charged only with soliciting Zelmanowicz to lie in regard to the transfer of cash from Zelmanowicz to Karassik. The tape recordings serve to corroborate the falsity of the utterance solicited (Penal Law, § 210.50).
The defendant also argues strenuously that the conduct here described does not fit within the statutory definition that requires that the defendant "solicits, requests, commands, importunes, or otherwise attempts to cause” a proscribed activity (Penal Law, § 100.05). It is the defendant’s contention that his conduct here was passive and not the active importuning envisioned by the framers of the statute. However, a fair view of the evidence presented to the Grand Jury leads to the conclusion that sufficient evidence was presented for the grand jurors to return an indictment as a matter of law. The defendant may argue this point as a matter of fact to the triers of the fact interjecting the defense of entrapment if he sees fit.
The defendant further contends that the perjurious testimony allegedly solicited was not material to the Grand Jury’s inquiry. While this court finds substantial merit in this contention, it is raised here prematurely. The courts of this State have consistently held that materiality in a perjury prosecution is a jury question (People v Dunleavy, 41 AD2d 717; People v Perna, 20 AD2d 323). Further, CPL 210.20 (subd 1, par [b]) allows for dismissal of an indictment only where the evidence fails to establish the crime charged or any lesser included offense. As perjury in the third degree does not require a showing of materiality, a failure of evidence in this area would still expose the defendant to liability for the lesser included offense of solicitation in the third degree, a violation.
Finally, the charge given on intent was sufficient to allow *846 the Grand Jury to make an informed determination of the defendant’s intent based on the available evidence.
IV DUE PROCESS
Having determined that the investigation had a proper jurisdictional basis, it must now be determined if the methodology employed violated the defendant’s constitutional rights. The defense contends that the use of an informer, based solely on the information supplied by Zelmanowicz, violated the defendant’s Fourth Amendment right to be free from unreasonable searches and seizures. No doubt Fourth Amendment proscriptions apply to oral statements (Hoffa v United States, 385 US 293); yet the Supreme Court has ruled that the use of informants is a permissible law enforcement tool. In United States v White (401 US 745, 749) the court makes the following statement: "however strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities. In these circumstances, 'no interest legitimately protected by the Fourth Amendment is involved,’ for that amendment affords no protection to a 'wrongdoer’s misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.’ Hoffa v. United States, at 302. No warrant to 'search and seize’ is required in such circumstances, nor is it when the Government sends to defendant’s home a secret agent who conceals his identity and makes a purchase of narcotics from the accused, Lewis v. United States, 385 U. S. 206 (1966), or when the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant’s words and the evidence so gathered is later offered in evidence. Lopez v. United States, 373 U. S. 427 (1963)”.
In Hoffa v United States (385 US 293, 302) the Supreme Court makes this same point even more forcefully: "Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer’s misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.”
Here, the Special Prosecutor was involved in a legitimate ongoing investigation. Under such circumstances the use of an informant as an investigatorial aide does not violate the Fourth Amendment.
*847 The defendant also maintains that the use made of the subpoena violated his due process rights. While it cannot be seriously contended that the principal purpose of this subpoena was anything but an inducement to Karassik to solicit perjury, it was not a sham in the sense that it was issued to someone not legitimately under a Grand Jury inquiry. Zelmanowicz was co-operating and there was no necessity for the issuance of a subpoena, yet he was subject to subpoena and this court does not feel it an abuse of due process for the Special Prosecutor to issue a valid, if unnecessary, subpoena in order to obtain a collateral benefit. In any event, this activity does not approach the misuse of court processes approved, if soundly criticized in Matter of Nigrone v Murtagh (46 AD2d 343, affd 36 NY2d 421), People v Rao (53 AD2d 904), and People v Archer (NYLJ May 10, 1977, p 13, col 4) where fictitious cases were presented to the Grand Jury. This subpoena constitutes potential evidence of entrapment if the defendant chooses to interpose that defense at trial, but is not a violation of due process.
V CHARGING ENTRAPMENT TO THE GRAND JURY
This issue was raised at the court’s own initiative because of a trend in recent cases mandating the charging of affirmative defenses before the Grand Jury (see People v Smith, NYLJ, Mar 16, 1976, p 7, col 3; People v Ferrara, 82 Misc 2d 270). Two distinctions separate the instant case from those cited above. Firstly, both cited cases involve clear showings of evidence of such a nature that the charging of the appropriate affirmative defense would almost surely have resulted in a failure to indict. In fact, the evidence was so clear that the failure to charge the affirmative defense could be deemed a denial of fundamental justice. In the present case, while entrapment is a viable and arguable issue, it is not so obviously applicable as to make the failure to charge a denial of due process.
Secondly, no case involving entrapment has ever required a charge of entrapment to be given to the Grand Jury. Entrapment involves a confession and avoidance theory of defense, the employment of which this court thinks should best be left to the discretion of defense counsel. Also, decisions concerning the credibility of witnesses are inherent in the entrapment defense and these are best left for the triers of fact. In People v Philipson (59 Misc 2d 420, 423) the court sums up the *848 arguments for a jury determination of this issue: " 'The primary arguments offered for jury determination seem to be three in number. First, that the entrapment issues involve close questions of fact, turning on the credibility of the defendant or the alleged entrapper, and such weighing of credibility is traditionally considered to be within the jury’s peculiar competence. Second, that the subjective way in which entrapment is traditionally defined involves a determination of the defendant’s motivation and intent which require the collective judgment of a jury, resulting in the composite judgment of a reasonable man as to what those motives were. Third, that the juries in entrapment cases express community standards, acquitting whenever police practices shock the common conscience, regardless of the legal technicalities involved’ ”.
In short, had this case involved an evidentiary fact pattern evincing a clear case of entrapment to such a degree that the interests of justice would have been undermined by a failure to so charge, this court would feel compelled to extend the doctrine of charging affirmative defenses to the Grand Jury to include entrapment. However, where, as here, the defense is viable but not pervasive, it is best left as a trial issue where defense counsel can weigh the advantages and disadvantages of raising it and the jury can make its decision on credibility based on the testimony of all the witnesses including the defendant.
The motion to dismiss the indictment is denied. [Additional material omitted from publication.]