■ The People of the State of New York, Respondent, v Rudolph Bruce, Appellant.—Appeal from a judgment of the County Court of Tompkins County, rendered July 1, 1977, convicting defendant on his plea of guilty of attempted burglary in the third degree. On October 29, 1976, defendant was indicted and charged with burglary in the third degree and criminal possession of stolen property in the second degree. Upon arraignment on November 23, 1976, he entered a plea of not guilty to both counts. On September 15, 1976, defendant signed a statement indicating that in the month of July, 1976, he and one Eric Gordon entered the downstairs apartment at 414 West Seneca Street, Ithaca, New York, and took some tools which, several days later, they placed in a shed at the residence of Gladys Gagnon. The defendant thereafter moved for an order suppressing from evidence this statement. After a hearing held on January 28, 1977, the motion to suppress was denied. On April 7, 1977, defendant entered a plea of guilty to the reduced charge of attempted burglary in the third degree, and was sentenced on July 1, 1977 to an indeterminate term of imprisonment of not more than three years. Defendant contends that he is illiterate, and at the time he signed the statement he was 17 years of age. On the statement, he indicated he was in the 10th grade. A Binet intelligence test given by a certified school psychologist indicated that he had an IQ of 59. Prior to making the statement, the defendant was twice given the *Miranda* warning which was read to him at normal speed. At the hearing, defendant testified that he understood that "his rights" had something to do with the law, but did not know what his rights were, and did not realize that the statement he gave could be used against him in a criminal trial. He also stated that he did not know what the word "advice" meant, and did not know the meaning of the word "waiver". He also did not realize that he could have a lawyer by his side while he was being interrogated. He also testified that he did not understand the printed warning on the statement which he signed. A certified school psychologist testified that she had administered a Binet intelligence test to the defendant about one month before the hearing, and, in her opinion, he had an IQ of 59. She stated that he had a vocabulary of the approximate level of a 10 year old, and would have difficulty in understanding the entire warning form, unless it were read at a slow pace with emphasis on certain words. In her opinion, defendant could not understand the waiver of rights portion of the statement, or the concept of waiver. The officer who took the statement did not attempt to explain the meaning of the warning to the defendant. The statement was read to defendant before he signed it, because defendant could not read. Defendant contends that the prosecution failed to establish that defendant knowingly and intelligently waived his privilege against self incrimination, and his right to counsel prior to, and at the time of interrogation as required by *Miranda v Arizona* (384 US 436) and *People v Witenski* (15 NY2d 392). Considering the entire record, it is clear that the defendant did not have the mental capability of understanding the warnings read to him without additional explanation and, therefore, did not intelligently waive his right to counsel *(People v Drake,* 26 AD2d 729; *People v Davis,* 23

AD2d 963; *People v Randolph,* 58 Misc 2d 167; *People v Dumas,* 51 Misc 2d 929). A further indication that defendant did not have the capability of understanding the warnings is the fact that the court, in accepting his plea of guilty, found it necessary to explain the meaning of voluntary. The cases of *People v Caruso* (45 AD2d 804), *People v Chaffee* (42 AD2d 172), and *People v Lux* (34 AD2d 662, affd 29 NY2d 848) cited by the trial court and relied upon by People, all involved defendants who were gainfully employed at the time the crimes were committed, and there was evidence that they were capable of understanding and intelligently waiving their rights. The statement given by defendant should, therefore, have been suppressed. The judgment of conviction is vacated, and the order denying suppression is reversed, and the case is remitted to the County Court for further proceedings. Judgment vacated; order denying motion to suppress certain evidence reversed, on the law and the facts; motion granted, and a new trial ordered. Kane, J. P., Staley, Jr., Main, Larkin and Herlihy, JJ., concur.