OPINION OF THE COURT
E. Leo Milonas, J.
The defendant was indicted on October 26, 1978 for the crime of murder in the second degree. He now moves to dismiss on the ground that the evidence before the Grand Jury was insufficient to support the charge against him and that the Grand Jury proceeding was defective. The court, having examined the minutes of the Grand Jury, finds that *396 the evidence was adequate, and dismissal on this basis is clearly unwarranted. However, defendant’s challenge to the validity of the Grand Jury proceeding merits some discussion as it relates principally to the extent of the People’s obligation to explore before the Grand Jury possible defenses which the accused may possess, an issue which has not generally received much attention.
The facts are as follows. Shortly after midnight on October 9, 1978, the police were directed to 524 East 13th Street in connection with a reported stabbing. In a first floor rear apartment, they located the victim, who was later identified as one Marvin Williams. After participating in a search for the perpetrator, one of the officers noticed two young men at the entrance to the building, attempting to gain access. They were admitted by a tenant, whereupon one of the men, the defendant herein, approached the officer and confessed to having stabbed Williams. The defendant and his companion then led the officer to the deceased’s apartment. The defendant retrieved a bloodied knife, the weapon which he claimed having used on Williams, as well as a pistol from under the bed. The defendant made a full statement to the authorities, both at the scene and again at the hospital where he was subsequently treated for wounds presumably sustained at the hands of the deceased.
According to the defendant, Williams had, over the course of approximately six years, extorted money and personal property from him, forcing him to steal from his family and friends in order to meet those demands. Williams allegedly effected his purpose by threatening and causing physical injury to the defendant, thereby placing him in such terror that he refrained from contacting the police lest he be subjected to severe retaliation. In fact, the defendant asserts, on two separate occasions he attended school out of the city in order to escape Williams, but upon his return, the deceased found him and resumed the harassment.
On the night of the murder, Williams supposedly induced the reluctant defendant to accompany him to his apartment to help repair a door lock. Immediately upon entering the premises, Williams produced a knife and attempted to compel the defendant to perform a sexual act upon him. When the defendant resisted, he was stabbed, and the resulting injury necessitated an eight-day hospital stay. However, following the attack and not fully aware of the seriousness of his *397 wound, the defendant still continued to hold out against Williams. At this point, the defendant asserts, the deceased pulled a gun and held it to his head, but finally released him when he realized that the defendant was not going to give in and was, moreover, bleeding profusely.
The defendant left the building. On the street, he encountered his friend, Bobby Pages, and informed him of the attack. Pages grabbed a pipe, and the two of them went back to Williams’ apartment. After what appears to have been a brief altercation between Williams and Pages, the defendant picked up a kitchen knife and proceeded to stab the deceased. Shortly thereafter, they departed, and Pages telephoned 911 from the defendant’s home.
Based on this version of the facts, as related by the defendant to the police, the District Attorney and the Grand Jury, defense counsel sent a letter to the foreman of the Grand Jury in which he wrote that: "I am requesting on behalf of my client, John Galuppo, Jr., that in addition to the witnesses he has already mentioned who are willing to testify that they personally know of the terror, extortion and humiliation perpetrated on John Galuppo over the past six years by Marvin Williams, you hear the testimony of Doctor Kernsell, who will testify that, in his professional opinion, John Galuppo was temporarily insane at the time of the stabbing and was not responsible for his act as he lacked the ability to distinguish right from wrong at that time. In addition, he will testify that John Galuppo’s mental illness was brought about by the acts of terrorism perpetrated upon him by the said Marvin Williams.”
The District Attorney, however, advised the members of the Grand Jury that the lack of responsibility, or insanity, defense is not available before the Grand Jury. They could, if they so desired, he told them, hear defendant’s other proposed witnesses — that is, except for the psychiatrist — on the issue of justification and also for the purpose of demonstrating extreme emotional disturbance so as to determine whether manslaughter in the first degree, rather than murder in the second degree, would be the appropriate charge. The Grand Jury then voted against calling the additional witnesses requested by defendant.
Defendant’s contention that the Grand Jury proceeding was defective is predicated on a number of grounds. It is his position that the instructions provided to the Grand Jury were *398 inadequate and improper in that the prosecutor wrongfully stated that the psychiatric testimony offered by the defendant was not material, that he failed to charge them as to the circumstantial evidence rule relating to intent, and that he generally did not give the necessary legal instructions applicable to the case. He also argues that the Grand Jury was made to become biased, hostile and unresponsive due to the People’s policy of having it hear exclusively homicide cases. Finally, the defendant asserts that the District Attorney unfairly cross-examined him and did not examine the other witnesses with the same zeal and severity as he did the defendant.
Recently, there have been a series of cases holding that the District Attorney, as legal adviser to the Grand Jury is required, when the evidence so indicates, to charge affirmative defenses. (People v Smith, NYLJ, March 16, 1976, p 7, col 3; People v Ferrara, 82 Misc 2d 270; see, also, People v Karassik, 90 Misc 2d 839.) This court certainly concurs with the view expressed in those decisions. In the instant situation, however, the prosecutor instructed the Grand Jury on justification, an ordinary rather than an affirmative defense. He also charged extreme emotional disturbance and manslaughter in the first degree, as well as murder in the second degree. Therefore, what is involved here is not so much the adequacy of the District Attorney’s instructions, but whether it was proper for him to tell the Grand Jury that it could not consider the defense of lack of responsibility (i.e., mental disease or defect pursuant to section 30.05 of the Penal Law), thus effectively precluding the Grand Jury from hearing evidence on the matter of the accused’s defense.
Unfortunately, there appears to be little authority on the question of a defendant’s right to present his defenses before the Grand Jury and, concomitantly, the People’s responsibility to enable him to do so. In support of his argument that the prosecutor’s advice to the Grand Jury in this respect was wrongful, the defendant cites People v Dumas (51 Misc 2d 929) and People v Gibson (15 Misc 2d 642). In Gibson, defense counsel, while the Grand Jury was deliberating, informed the foreman that his client was receiving psychiatric care and offered to have a psychiatrist testify as to the defendant’s condition at the time of the alleged offenses. The Grand Jury declined to listen to that testimony, an action which, according to the court, did not mandate dismissal of the indictment, since it was within the Grand Jury’s discretion to determine *399 the area of its inquiry. By implication, then, the Grand Jury could have elected to hear the psychiatric testimony had it chosen to do so, and the District Attorney’s conduct in the present situation in not allowing exploration into defendant’s psychiatric defense constituted error.
Similarly, in Dumas, the court declared that the refusal of the Grand Jury to hear evidence of defendant’s mental condition at the time that the crime was committed did not justify dismissal. The court, nevertheless, in a rather unclear opinion, proceeded to grant the motion to inspect, evidently in advance of dismissing the indictment, apparently on the ground that since the validity of defendant’s confession had not been established, it was appropriate that his mental competency be considered by the Grand Jury. Although the People contend that both Dumas and Gibson are distinguishable from the instant case, this court does not agree that these decisions are inapplicable. However, the court finds them to be unpersuasive.
Clearly, there are circumstances when the Grand Jury would be warranted in hearing evidence concerning an accused’s defenses, and the failure of the prosecution to allow inquiry into this area would necessitate dismissal. For example, if the defendant were to advance a defense of justification or duress, then it would be improper for a District Attorney to counsel the Grand Jury against hearing testimony as to those defenses. The prosecutor here did, in fact, inform the members of the Grand Jury that they had the option of listening to defendant’s proposed witnesses, other than the psychiatrist, on the issue of justification, and he also instructed them on justification. The fact that he foreclosed exploration into the defendant’s mental condition does not, in the view of this court, require that the indictment now be dismissed.
In People v Karassik (90 Misc 2d 839, 847, supra), the court, in a situation involving entrapment, held that "the credibility of witnesses are inherent in the entrapment defense and these are best left for the triers of fact.” The court further stated that while entrapment might be a viable and arguable issue, it was not so apparent as to render even the failure to charge entrapment a denial of due process. See, also, People v Filis (87 Misc 2d 1067), in which the court concluded that in any case where particular evidence would be so compelling as to cause the Grand Jury to consider an alternate action, then the District Attorney would be obliged to introduce such evidence. *400 In the instant matter, the defendant testified at length about his relations with the deceased. The Grand Jury had the choice, which, in its discretion, it preferred not to use, of hearing other witnesses also expound on that subject. The prosecutor explained manslaughter in the first degree and extreme emotional disturbance to the Grand Jury, which decided to indict the defendant for murder in the second degree. Their action was, in view of the evidence available to the Grand Jury, by no means unreasonable.
The letter submitted by the defense attorney to the Grand Jury did not, contrary to what defendant now asserts in his motion papers, claim that the purpose of having the psychiatrist testify was to show that he was incapable of forming the requisite criminal intent. The communication merely declared that John Galuppo "was temporarily insane at the time of the stabbing and was not responsible for his act as he lacked the ability to distinguish right from wrong at that time”. The court concurs with the People’s argument that the nature of the defense of mental disease or defect precludes its being the subject of Grand Jury consideration. For one thing, an individual who is acquitted by reason of mental disease or defect must, pursuant to CPL 330.10 and 330.20, be committed to the custody of the Commissioner of Mental Hygiene. Thus, a verdict of not guilty by reason of mental disease or defect means an implicit finding that the defendant did, in fact, commit the crime charged but lacked criminal responsibility for his conduct. A Grand Jury, unlike a petit jury, is not authorized to render ultimate findings of guilt or innocence. Moreover, a person who asserts the defense of mental disease or defect must make himself available for examination by the People’s experts, and the result is frequently conflicting testimony by defense and prosecution psychiatrists. The Grand Jury is simply in no position to resolve the factual dispute between the parties. It was, therefore, not improper for the District Attorney to advise the Grand Jury in the manner in which he did.
The court has considered defendant’s other contentions and finds them to be without merit. Defendant has provided absolutely no facts to show that the Grand Jury was hostile and biased toward him because it dealt exclusively, or primarily, with homicide cases, and the Grand Jury minutes do not reflect that the District Attorney’s cross-examination of the defendant was unfair or prejudicial so as to require dismissal. *401 Finally, the evidence before the Grand Jury was not of such a nature that a circumstantial evidence charge regarding intent was necessary. Consequently, the motion to dismiss is denied.