Michael A. GRANT, Appellant,

v.

STATE of Alaska, Appellee.

No. 3750.

Supreme Court of Alaska.

Jan. 9, 1981.

J. Randall Luffberry, Palmer, for appellant.

Michael J. Stark, Asst. Atty. Gen., Daniel W. Hickly, Chief Prosecutor and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

MATTHEWS, Justice.

On the night of September 27, 1976, Michael Grant was visiting a friend, Jary Crutchfield, at his home in Bethel. Crutchfield received a telephone call informing him that Phil Lacey had entered the ice cream parlor Crutchfield managed. Since Lacey had been forbidden to go there by Crutchfield because of his past behavior toward female employees, Crutchfield decided to drive to the ice cream parlor and Grant accompanied him. When they arrived, they found that Lacey had gone and decided to look for him at the Wild Goose Saloon. They entered the saloon, separated, and Crutchfield found Lacey. The two had an animated discussion and left the saloon, followed by an interested crowd of spectators, to engage in a fist fight. Lacey then drew a pistol and pointed it at Crutchfield. Crutchfield yelled to Grant, who was standing in the crowd of onlookers, "Mike he's got a gun, he's got a gun." Grant ran across the street to his house, grabbed a shotgun, loaded it with one shell and ran back toward where he had last seen Lacey and Crutchfield. On the way, Grant heard one shot, which he assumed was discharged from Lacey's pistol. When he arrived, he confronted Lacey, who was still holding the pistol. He did not see Crutchfield and assumed that he had been shot. According to Grant he pointed his shotgun at Lacey and told him to drop the pistol or he would shoot. Lacey fled around to the back of the saloon, but was intercepted by Grant who again warned him to stop or he would shoot. Lacey then headed into a swamp in near total darkness. Grant, intending, as he testified, to frighten Lacey into stopping, discharged his firearm after los-

ing sight of Lacey. The police arrived soon thereafter and Grant informed them that he had Lacey pinned down in the swamp. The police found Lacey lying in knee-deep water and transported him to the hospital because he appeared to be having cramps. At the hospital, it was discovered that Lacey was suffering from minor wounds caused by shotgun pellets.

An indictment was issued charging Grant with assault with a dangerous weapon in violation of AS 11.15.220,[1] stating that Grant "did unlawfully and feloniously assault Phillip N. Lacey, by shooting Phillip N. Lacey with [a] shotgun." Grant was tried and found guilty of the lesser included misdemeanor of careless use of firearms in violation of AS 11.15.200, which provides in part:

> Careless use of firearms. (a) A person who intentionally, and without malice, points or aims a firearm at or toward a person, or discharges a firearm so pointed or aimed at a person, or points and discharges a firearm at or toward a person or object without knowing the identity of the object and maims or injures a human being, is guilty of the careless use of firearms, and upon conviction is punishable by a fine of not more than $1,000, or imprisonment for not more than one year, or by both.

Grant appeals on multiple grounds. We find one of them to have merit, and thus reverse.

■ We first address Grant's contention that the indictment should have been dismissed because the prosecuting attorney failed to explain to the grand jury the law concerning the defense of force used while effecting an arrest.

In the recent case of *Oxereok v. State*, 611 P.2d 913 (Alaska 1980), a contention was raised that the prosecutor should have instructed the grand jury on the defense of diminished capacity as well as the implica-

1. AS 11.15.220 states:

   *Assault with dangerous weapon.* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment in the penitentiary for not more than 10 years nor less than six months, or by imprisonment in jail for not more than one year nor less than one month, or by a fine of not more than $1,000 nor less than $100.

tions of the possibility that the defendant may have acted in the heat of passion. We rejected this argument and did not express any view as to whether the prosecutor ever had a duty to instruct on affirmative defenses: "While [the prosecutor] probably anticipated the fact that at trial the defendant might rely on the defense of diminished capacity, or claim that he acted in the heat of passion, we see no reason for the prosecutor, at the indictment stage, to urge consideration of those possible defenses on the grand jury in this case." 611 P.2d at 917.

Grant relies on *People v. Karassik*, 90 Misc.2d 839, 396 N.Y.S.2d 765 (Sup.Ct.1977), in attempting to persuade us to accept his argument. In *Karassik* the court held that the prosecutor did not have a duty to charge the grand jury with an affirmative defense which, while "a viable and arguable issue, is not so obviously applicable as to make the failure to charge a denial of due process." The court distinguished the case before it from two prior cases which involved "clear showings of evidence of such a nature that the charging of the appropriate affirmative defense would almost surely have resulted in a failure to indict. In fact, the evidence was so clear that the failure to charge the affirmative defense could be deemed a denial of fundamental justice." 396 N.Y.S.2d at 771.

The standard expressed in *Karassik* as triggering a duty to explain the law pertaining to affirmative defenses is not present in this case. Grant's defense that he was in the process of effecting an arrest

and used no more force than necessary to do so created a legitimate issue for the jury. However, it was not a defense which, had it been presented to the grand jury, would "almost surely" have led to a failure to indict.

■ We next address Grant's claims of error regarding the superior court's failure to give certain jury instructions pertaining to a private person's right to use deadly force in effecting a felony arrest and a private person's right to use reasonable force in the protection or defense of others.

Since he was only indicted for the second incident, Grant argues that his proposed instruction No. 1[2] was necessary to prevent him from being found guilty of either assault with a dangerous weapon or careless use of firearms for the first time he pointed his shotgun toward Lacey but did not fire.

We think the instructions given by the trial court made it clear that it was the second pointing, during which the shooting occurred, which was charged by the indictment. The jury was required to find "that at the time and place alleged, the defendant Michael A. Grant, did willfully, unlawfully, and feloniously assault Phillip N. Lacey by shooting Phillip N. Lacey with said shotgun." In addition, an examination of the final arguments of counsel leaves no doubt that the jury understood it was the shooting incident they were to evaluate for criminality.[3]

■ Grant argues that his proposed instructions Nos. 6 and 7[4] should have been

2. Grant's Proposed Instruction No. 1 provided:
    You are instructed that a person is justified in the use of force when and to the extent he reasonably believes that such conduct is necessary to defend another against the imminent use of unlawful force.

3. The prosecutor argued to the jury that only one pointing had actually taken place, *i. e.*, at the time of the shooting. However, since the case will have to be retried we suggest that the court expressly instruct the jury that only the second pointing is at issue.

4. Instruction No. 6 provided:
    A private person has the same authority as a peace officer to utilize deadly force against an actual felon if the latter could not other-

wise be taken. However, to justify the use of deadly force against a felon in order to effect an arrest or prevent his escape, it must be shown that a felony had in fact been committed by the felon sought to be arrested. A private person in making an arrest is not permitted to use deadly force against a person whom he merely suspects of having committed a felony. The private person may not shoot to kill or wound unless it is necessary to effect an arrest or prevent escape.
    Instruction No. 7 provided:
    You are instructed that if you find from the evidence that Phil Lacey pointed a loaded pistol at Jary Crutchfield in an unlawful offer or threat of bodily harm to Mr. Crutchfield then Mr. Lacey did in fact commit the felony

presented to the jury rather than those given by the court.[5] The State contends that the instructions actually given by the court adequately apprised the jury that a private person may use "reasonable, necessary and proper force" to effect an arrest of a fleeing felon.

The court did not instruct the jury that a private person may use deadly force, or necessary and proper force, to effect the arrest of an actual felon.[6] The State suggests in its brief that the court's instruction

of Assault with a Dangerous Weapon, and in such a case the defendant, Michael Grant was legally authorized to effect an arrest upon Mr. Lacey utilizing such force necessary and proper for his detention or to prevent escape.

5. The court gave the following instructions:
   You are instructed that Alaska Statutes Section 12.25.010 provides:
   An arrest may be made by a peace officer or by a private person.
   You are instructed that Alaska Statutes Section 12.25.030 provides:
   A private person or a peace officer without a warrant may arrest a person
   (1) for a crime committed or attempted in his presence;
   (2) when the person has committed a felony, although not in his presence;
   (3) when a felony has in fact been committed, and he has reasonable cause for believing the person to have committed it.
   You are instructed that an arrest is made by the actual restraint of a person or by his submission to the custody of the person making the arrest.
   You are instructed that Alaska Statutes Section 12.25.070 provides:
   No peace officer or private person may subject a person arrested to greater restraint than is necessary and proper for his arrest and detention.

6. At common law, a private citizen had the same right as a peace officer to use all necessary means, including deadly force, to effect the arrest of an actual felon. *Suell v. Derricott*, 161 Ala. 259, 49 So. 895 (1909); *People v. Walker*, 32 Cal.App.3d 897, 108 Cal.Rptr. 548 (1973); *Crawford v. Commonwealth*, 241 Ky. 391, 44 S.W.2d 286 (1931); *Wright v. Haffke*, 188 Neb. 270, 196 N.W.2d 176 (1972); *State v. Nodine*, 198 Or. 679, 259 P.2d 1056 (1953); *Commonwealth v. Chermansky*, 430 Pa. 170, 242 A.2d 237 (1968); *Scarbrough v. State*, 168 Tenn. 106, 76 S.W.2d 106 (Tenn.1934); *State v. Kerr*, 14 Wash.App. 584, 544 P.2d 38 (1975). The trial court expressed its belief that this rule had been changed by AS 12.25.080 which provides:

in which it quoted AS 12.25.070 was sufficient.[7] However, AS 12.25.070 only speaks to the force that a private person may use to subject a person already arrested to continued arrest and detention. By analogy, it might seem that no different standard should apply to the force needed to make an arrest in the first instance.[8] However, the prosecutor in his final argument to the jury, argued that the standard implicit in AS 12.25.070 did not apply to this case because there was no arrest.[9] Given the prosecu-

If the person being arrested either flees or forcibly resists after notice of intention to make the arrest, the peace officer may use all the necessary and proper means to make the arrest.

The trial court reasoned that the omission of private persons from section .080 indicates that the legislature intended to preclude private persons from using force when making arrests. We think a close question exists on this point. However, the State does not defend the trial court's position. Instead, the State's argument accepts the view that a private person may use all necessary and proper force in making a felony arrest. In light of this we will, for the purposes of this case, assume that section .080 does not modify the common law rule. This assumption shall govern at the retrial. We note that effective January 1, 1980, a clarifying statute has been passed allowing a private person to use deadly force when necessary to make the arrest of 1) a person who has committed a felony involving the use of force against another person or 2) a person who has escaped from custody while in possession of a firearm. AS 11.81.390. Thus the question raised by the trial judge concerning the meaning of section .080 will not have continuing importance in Alaska.

7. AS 12.25.070 provides:
   *Limitation on restraint in arrest.* No peace officer or private person may subject a person arrested to greater restraint than is necessary and proper for his arrest and detention.

8. In *Wilson v. State*, 473 P.2d 633, 635 (Alaska 1970) we cited AS 12.25.070 as authority for our statement that "neither an officer nor a private person may employ more than necessary force in making an arrest."

9. The prosecutor stated:
   This is not the situation where Mr. Lacey was ever put under arrest. No peace officer or private person may subject a person arrested to greater restraint than is necessary and

tor's remarks and the State's position here,[10] we hold that the jury should have been instructed that a private person may use such means as may be necessary and proper to effect the arrest of an actual felon, including deadly force.

Grant objects on a number of grounds to the giving of lesser included offense instructions. The court instructed essentially that the jury could find Grant guilty of careless use of firearms if it was not satisfied that the crime of assault with a dangerous weapon had been proven.[11]

■ Grant first argues that the instruction should not have been given because the elements of careless use of firearms are not necessarily included in assault with a dangerous weapon. We cannot agree. The court instructed the jury that in order to find Grant guilty of assault with a dangerous weapon it must find, among other things, "that at the time and place alleged, the defendant Michael A. Grant, did willfully, unlawfully and feloniously assault Phillip N. Lacey, by shooting Phillip N. Lacey with said shotgun." The court also instructed the jury that "feloniously" means with criminal intent and evil purpose. The jury could have found that Grant acted without criminal intent or evil purpose. Therefore, it could have acquitted him of assault with a dangerous weapon, but con-

victed him of careless use of firearms, since evil purpose is irrelevant to that charge. *See Elisovsky v. State*, 592 P.2d 1221 (Alaska 1979); AS 11.15.200(a).

■ Grant next argues that the court's instruction on careless use of firearms would have allowed the jury to find him guilty of the crime of careless use even though the discharge was intentional. AS 11.15.200 careless use of firearms) is a three part statute which prohibits the following conduct:

1. Intentionally and without malice pointing or aiming a firearm at or toward a person;

2. Discharging a firearm which is pointed or aimed, intentionally and without malice, at a person.

3. Pointing and discharging without malice, a firearm at or toward a person or object without knowing the identity of the object and maiming or injuring a human being.

The first portion of the statute applies to intentional pointings, including those instances where a firearm pointed towards a person is discharged. We have stated that the second portion of the statute, which proscribes intentional pointings accompanied by a discharge, applies only to unintentional discharges since an intentional discharge accompanied by an intentional

proper for his arrest and detention. There never even was an arrest, so that, ladies and gentlemen, simply doesn't apply.
and again,
Now, I submit to you first of all, there was no arrest; consequently, the instructions are not relevant in this case.

**10.** See note 6, *supra*.

**11.** The instructions provided:
If you are not satisfied beyond a reasonable doubt that this defendant is guilty of the offense of Assault with a Dangerous Weapon as charged in the Indictment, he may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense beyond a reasonable doubt. The offense of Assault with a Dangerous Weapon as charged in the Indictment necessarily includes the lesser offense of Careless Use of Firearms.
The law applicable to the crime of Careless Use of Firearms, a lesser included offense of

Assault with a Dangerous Weapon, is as follows:
A person who intentionally, and without malice points or aims a firearm at or toward a person, or discharges a firearm so pointed or aimed at a person is guilty of Careless Use of Firearms.
The material allegations and essential elements of the crime of Careless Use of Firearms, each of which the State must prove beyond a reasonable doubt before you may find this defendant guilty of the lesser included offense of Careless Use of Firearms, are:
1. That on or about the 27th day of September, 1976 at or near Bethel, in the Fourth Judicial District, State of Alaska, the defendant, Michael A. Grant, did intentionally and without malice point or aim a shotgun at Phillip N. Lacey,
2. or, having so pointed or aimed a shotgun at Phillip N. Lacey discharged said shotgun.

pointing would be assault with a dangerous weapon as prohibited by AS 11.15.220, or shooting with intent to kill or wound as prohibited by AS 11.15.150. *Christie v. State*, 580 P.2d 310, 319 n. 29 (Alaska 1978). In *Christie* we held the third portion of the statute applies to *unintentional* pointings accompanied by unintentional or intentional discharges resulting in injury to a person. *Id.* at 319–20.

While the evidence is undisputed that Grant intentionally fired his weapon, it is not clear whether Grant intentionally pointed his weapon toward Lacey. Therefore, the jury could have found Grant guilty of careless use under either the first or third, but not the second, portion of the statute. On retrial, the jury should only be instructed on the first and third portions of the statute.

Grant further argues that under the careless use instruction, the jury could have improperly focused on the first rather than the second pointing of the shotgun. As with our discussion of proposed instruction No. 1 above, the court's instructions taken as a whole and the arguments of counsel, leave no reasonable possibility of confusion.

■ Grant also contends that the lesser included instructions violated his right to notice of the charges against which he must defend. This point is foreclosed by *Elisovsky*, 592 P.2d at 1226, where we held that an indictment on the charge of assault with a dangerous weapon was sufficient notice of the lesser included offense of careless use of a firearm.

Grant's next point relates to the court's failure to read all instructions to the jury at the conclusion of argument. The court at the commencement of trial read to the jury seven general instructions concerning the function and duties of jurors, the presumption of innocence, the burden of proof, reasonable doubt, and direct and circumstantial evidence. The court did not reread these general instructions at the close of trial, but included them in the packet of instructions given to the jury.

Alaska Rule of Criminal Procedure 30 provides in relevant part:

(a) *Requested instructions—objections.* At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. *Additionally, the court in its discretion may give the jury such instructions it deems necessary at any stage of the trial.* The instructions shall be reduced to writing and read to the jury and shall be taken to the jury room by the jury. . . .

(b) *Instructions to be given.* The court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict.

(Emphasis added). Our Criminal Rule 30 differs from the corresponding federal rule in that the language emphasized above does not appear in the federal rule. Thus, those federal cases on which Grant relies precluding the court from giving some instructions at an early stage in the trial are not appropriate precedent in Alaska.

The practice of giving preliminary general instructions which do not necessarily have to be repeated after final argument has received the approval of the American Bar Association Project on Minimum Standards for Criminal Justice. *See* Standards Relating to Trial by Jury, § 4.6(d) 1968 which provide at 110.

After the jury is sworn the court may give preliminary instructions deemed appropriate for their guidance in hearing the case. After the arguments are completed, the court should give the jury all necessary instructions.

The commentary to this section states at 117–18:

Even if certain instructions are given after the jury is sworn, it will nonetheless be necessary for the jury to be instructed

before they retire for deliberations. The instructions given at this time will include at least some of the instructions which were given when the trial opened.

The commentary also quotes the following from Prettyman, *Jury Instructions—First or Last*, 46 ABA J. 1066 (1960):

I submit it makes no sense to have a juror listen to days of testimony only then to be told that he and his confreres are the sole judges of the facts, that the accused is presumed to be innocent, that the government must prove guilt beyond a reasonable doubt, etc. What manner of mind can go back over a stream of conflicting statements of alleged facts, recall the intonations, the demeanor, or even the existence of the witnesses, and retrospectively fit all these recollections into a pattern of evaluation and judgment given him for the first time after the events? The human mind cannot do so. It is not a magnetized tape from which recorded speech can be repeated at chosen speed and volume. The fact of the matter is that this order of procedure makes much of the trial of a lawsuit mere mumbo jumbo. It sounds all right to the professional technicians who are the judge and the lawyers. It reads all right to the professional technicians who are the court of appeals. But to the laymen sitting in the box, restricted to listening, the whole thing is a fog.

Why should not the judge, when the jury is sworn, then and there tell them the rules of the game: (a) the function of the indictment, (b) the function of the jury as the sole judges of the facts, (c) the restriction of their consideration to the evidence, (d) the presumption of innocence of the accused, (e) the burden of reasonable doubt, (f) matters concerning credibility, (g) the functions of court and counsel, (h) the elements of the crimes charged, (i) a glossary of some of the terms to be used, (j) admonition as to outside conversation, newspaper accounts, etc., (k) explanation of the verdict and how it is reached—all the explanatory data which will put jurymen in the best possible position to perform the responsible task assigned to them.

Thus, the judge would instruct only as to the facts of functions and procedure which are general in application. And, of course, before the taking of the proof, he would not discuss any of the facts in the particular controversy about to be tried. The court should also instruct the jury at the end of the trial just before they retire. At that time should come his discussion of the case at hand, and he should recall then such parts of his initial instructions as need repeating.

I know we now have printed handbooks for jurors given them in advance, but these are no substitutes for the live, face-to-face, instruction and explanation from the judge on the bench. Some judges do instruct at the beginning of a trial. I submit to my brethren of the Bench and Bar it is a sensible course to follow.

As suggested by the above passages, Alaska Rule of Criminal Procedure 30 was designed to grant discretion to trial judges whether to give general instructions at the outset of a trial, at its close, or at both times. Here the court proposed not to repeat the instructions it had given at the beginning of the trial. The defendant made only a blanket objection to this and did not specify any of the instructions which particularly needed repeating. We do not believe that the court abused its discretion in refusing to reread all the instructions under these circumstances.

REVERSED and REMANDED.