Walter T. Gorman, J.
Defendant moves to inspect the Grand Jury minutes and seeks an order dismissing the indictment, based upon four alleged defects in the Grand Jury proceedings, to wit: (1) the failure to present a legally sufficient case; (2) the failure to introduce exculpatory evidence; (3) the failure to instruct the Grand Jury on certain matters of law; and (4) the failure to record some colloquy between the Assistant District Attorney and individual grand jurors.
At the commencement of the term of the February, 1974 Special Narcotics Courts Grand Jury, an Assistant District Attorney instructed that body on the law of criminal sale and possession of controlled substances. These remarks were recorded. Subsequently, additional recorded instructions were given on the law of the sale and possession of dangerous drugs before September 1, 1973. On February 6, 1974 evidence was presented to the panel concerning an alleged cocaine sale by the defendant. As a result, he was accused of selling cocaine on February 21, 1973 in an indictment charging criminal sale of a dangerous drug in the third degree and criminal possession of a dangerous drug in the fourth degree (two counts).
The Grand Jury minutes have been read. The testimony and exhibit show that an undercover police officer was introduced to the defendant on the day of the alleged sale. They proceeded to a bar. Later, the undercover officer handed the defendant $700 and received a tin foil package from another individual in return. Laboratory analysis revealed the contents to be more than one eighth of an ounce of cocaine. On January 17, 1974 the defendant was arrested for that sale. Based upon the foregoing, the court finds the minutes legally sufficient.
The alleged exculpatory evidence withheld from the Grand Jury consists of tape recordings of two telephone conversations between an informant and the defendant and testimony of the inability to purchase additional drugs from the defend *405 ant on later occasions. The conversations took place on February 16 and 21, 1973. Each time the informant placed the call and inquired about purchasing drugs. The defendant agreed to arrange the sales, but indicated he had to contact his connection in order to get the "coke.” On each occasion the parties indicated that they would meet later the same day. Defendant contends that 15 to 20 subsequent attempts to buy drugs from him were unsuccessful. Following a Townsend hearing Justice Joseph R Marro had found that between the alleged sale on February 21, 1973 and the death of the informant on December 1 of the same year, the Narcotics Unit had been fruitlessly trying to purchase cocaine from the defendant.
As a general rule, the District Attorney need only submit enough evidence to the Grand Jury to establish a legally sufficient case (People v Mitchell, 40 AD2d 117, 120-121), and, in fact, the Grand Jury can refuse to hear a defendant’s witnesses (CPL 190.50, subd 6). Although the District Attorney’s power to present evidence is largely discretionary (see CPL 190.50, subds 2, 3, 4), courts have, at times, found an abuse of this authority (People v Ferrara, 82 Misc 2d 270; People v Johnson, NYLJ, May 22, 1975, p 15, col 8).
Here, the supposedly exculpatory material, standing alone, does not support a theory of agency, entrapment or criminal facilitation. By itself, it shows that defendant was unable, rather than reluctant, to engage in other narcotics transactions, because his drug supply had dried up. Perhaps, the tapes and unsuccessful buy attempts might have bolstered or been consistent with one of the defense theories, had the defendant testified or brought other evidence in support thereof to the grand jurors’ attention. It should be noted that the second taped telephone call was on the same day as the alleged sale which is the subject of the indictment. Under the present circumstances, the information is, from the defendant’s viewpoint, innocuous, at best, and need not have been introduced into evidence.
Defendant’s third attack upon the Grand Jury proceedings concerns the absence of instructions on agency, entrapment and criminal facilitation. Courts have interpreted the relevant statute (CPL 190.25, subd 6) as compelling instructions on defenses where supported by a reasonable view of the evidence (People v Tapalansky, NYLJ, June 9, 1976, p 13, col 4; People v Smith, NYLJ, March 16, 1976, p 7, col 3-6, p 8, col 1; People v Ferrara, supra; see People v Mackey, 82 Misc 2d 766; People *406 v Hargrove, 80 Misc 2d 317). The Grand Jury evidence, even if considered with the tapes and unavailing buy attempts, neither mandates, nor warrants, the requested charge.
The last and most serious argument advanced by the defendant concerns off-the-record discussions between an Assistant District Attorney and individual grand jurors.
Before the Grand Jury heard any cases, an Assistant District Attorney advised them about their duties and the drug laws. He stated, in part, "there may come a time at the end of a particular case when you elect to put a question to a witness. I would ask that instead of putting the question out loud and, of course, everything that is said before the grand jury is taken down by the stenographer, that you would raise your hand and call myself or another Assistant District Attorney over to you and tell me what question you want to put to the witness. I will, at that time, make a determination as to the relevance of the question to the proceedings and whether the question would in any way prejudice the subject of the investigation”. Later, he again told them that "it is very important that business conducted in the grand jury, that is the business prior to your deliberations on any particular case, is recorded”.
Defendant contends that CPL 190.25 (subd 6) requires that the conversations between the Assistant District Attorney and individual grand jurors be recorded. That statute reads: "Where necessary or appropriate, the court or the district attorney, or both, must instruct the grand jury concerning the law with respect to its duties or any matter before it, and such instructions must be recorded in the minutes.” For the reasons stated below, this court finds that the District Attorney’s policy of not recording the screening of grand jurors’ questions is proper (contra, Matter of Four Reports of Nassau County Grand Jury, 87 Misc 2d 453; People v Benin, 186 Misc 548).
Until the enactment of the CPL on September 1, 1971, the duty of the Grand Jury stenographer was limited to taking down the "testimony” (Code Crim Pro, § 952-t). This obligation still remains (Judiciary Law, § 325). Meanwhile, the official stenographer in the trial court "must take full stenographic notes of the testimony and of all other proceedings in each cause tried or heard” (Judiciary Law, § 295). At a local criminal court hearing the reporter must take "stenographic minutes of the hearing” (Judiciary Law, § 319; see Code Crim Pro, § 221-b). Thus, traditionally the statutory proviso to record has *407 been broader in the courtroom than in the Grand Jury where, until recently, it had been confined to "testimony.”
This court interprets the statute to require the recording of instructions only when they pertain to the Grand Jury’s duties under the law or the law applicable to the case being heard or the law in general. Examples of the first are that no business can be conducted without at least 16 members present and the prerequisites for voting a true bill. Examples of the second are the elements of a crime under consideration and the significance of a witness’ prior conviction. The introductory remarks of the Assistant District Attorney, quoted, in part, above, fall into the third category.
In passing, it is noted that the staff notes of the revisors indicate the recording provision was added to the CPL in order to aid the court in exercising its discretion to allow the District Attorney to resubmit a case to the Grand Jury (1967 NY State Temporary Commission on Revision of the Penal Law and Criminal Code, for Proposed CPL 95.25, subd 6, which is now CPL 190.25, subd 6, Staff Comment, p 148).
The CPL does not provide a format for examining witnesses before the Grand Jury. Generally, the District Attorney poses and screens all questions. This procedure helps insure compliance with the rules of evidence (CPL 60.10); prevents the unintentional granting of immunity (CPL 190.40); avoids embarrassing and prejudicing witnesses, including the defendant, in the eyes of the Grand Jury; limits the infringement upon the rights of witnesses; allows the District Attorney to intelligently and properly frame the interrogatories and bring issues to the grand jurors’ attention; and preserves a more dignified and orderly atmosphere, thus providing a clearer record of the testimony. In fact, if the District Attorney does not filter the Grand Jury requests, his right to require a witness to sign a waiver of immunity could be thwarted (CPL 190.45, subds 3, 4; 190.50, subd 4). Also, if all such colloquy were stenographically noted, the benefits of screening might be reduced and could only be accomplished by the time-consuming process of having witnesses constantly stepping in and out of the Grand Jury room.
On the other hand, the legitimate inquiries of a grand juror should not be frustrated under the guise of screening. The giving of proper instructions to the Grand Jury at their impaneling by the court should alleviate, if not eliminate, this potential problem. The court can, moreover, inform the Grand *408 Jury that it, too, is available to intercede as legal advisor. Turning to the case at bar, the minutes reveal no suppression of the will of the Grand Jury or any attempt thereat by the District Attorney.
It should be noted that recently another trial court, in considering four Grand Jury reports, reached the opposite conclusion about the duty to record (Matter of Four Reports of the Nassau County Grand Jury, supra). There, unlike the present situation, the court found that "[t]he prerogative of the grand jurors to make full and fair inquiry was impaired and inhibited by the improper instruction of the Assistant District Attorney and the failure to correct this error” (id.). However, even if the recording requirement applies to the colloquy herein, dismissal would not be in order.
Noncompliance with the recording mandate, while not to be praised, should lead to a dismissal of the indictment only where the integrity of the proceeding "is impaired and prejudice to the defendant may result” (CPL 210.35, subd 5; People v Percy, 45 AD2d 284, affd 38 NY2d 806; People v Rallo, 46 AD2d 518, affd 39 NY2d 217).
In his argument defendant points to the following colloquy, which occurred at the conclusion of the first witness’ testimony:
"A.D.A.: Thank you are there any questions of Detective _? Juror raises hand, and A.D.A. confers with him.
"A.D.A.: I just want to explain to members of the grand jury that it does not matter when an arrest is made in terms of when the case is old or new law case. It’s the law in effect when the crime or alleged crime is committed so that the fact that the arrest was made in ’74 does not effect the body of law under which the defendant would be indicted, if you return an indictment.
"A.D.A.: Are there any other questions? Juror raises hand.
"Q Detective is it fair to say that the arrangements made through any other individual were to purchase an ounce, and the defendant actually delivered through the person in the bar something less than an ounce, is that correct?
"A That is correct.
"A.D.A.: Thank you very much.
"Detective_is called back in.
"Q Detective _ you’re still under oath, let me ask you one other question. Among the officer present when the *409 defendant was arrested was police officer__ among the officers present?
"A He was”.
In many instances "there is virtually no likelihood of prejudice if the prosecutor’s instructions are not recorded” (People v Percy, supra, p 286). Here, the testimony consumed less than 10 pages, the case is simple, the proof was clear, the charges are established, and most of the proceedings, including adequate instructions on the law, were recorded (see People v Clarkson, 50 AD2d 903). Thus, the proceeding conforms to the standards, set down in Percy and sanctioned by the Court of Appeals, for permitting an indictment with unrecorded instructions to stand.
Nevertheless, defendant suggests that the quoted segment reproduced above shows that a juror was possibly concerned whether a life sentence was involved, since the Assistant District Attorney had to explain to the jurors that they were considering an "old law” case. The possible punishment following conviction is an improper consideration. Also, the Grand Jury was entitled and required to be informed of which statute they were voting upon. Defendant further argues that the District Attorney improperly minimized the significance of the prearrest delay. He points to the instruction that "the fact that the arrest was made in ’74 does not effect the body of law under which the defendant would be indicted, if you return an indictment.” Presumably, according to the defendant, the Grand Jury might not have indicted, had they been given the cause of the hiatus between the crime and arrest dates, and might have been told something prejudicial to the defendant concerning the same. As noted above in the discussion of the failure to present allegedly exculpatory evidence, the delay factor, standing alone, has no relevance. The legal instruction was correct and the minutes do not indicate that any improper off-the-record statements were made. They merely suggest that an inquiry was made regarding the applicable law. Thus, no showing has been advanced that the integrity of the Grand Jury proceeding was impaired or that the defendant may have been prejudiced.
In view of the foregoing, defendant’s motion to inspect the Grand Jury minutes is granted. Defendant’s motion to dismiss the indictment is denied.