OPINION OF THE COURT
Rose L. Rubin, J.
Defendant, a thoracic surgeon, is charged with committing the crimes of grand larceny in the third degree and of falsifying business records in the first degree in that he is alleged to have stolen a sum of money in excess of $250 from Blue Cross-Blue Shield of Greater New York, Inc., between June 15, 1977 and September 20, 1977, and, during that same period, made and caused a false entry in the business records of Blue Cross-Blue Shield of Greater New York, Inc., with intent to defraud and to commit the crime of grand larceny in the third degree.
*58 I.
The evidence presented to the Grand Jury establishes, inter alla, that on June 15, 1977, William Grimes was admitted to Booth Memorial Hospital in Queens following a telephone call from his physician, Dr. Seymour Balkin, for emergency treatment. Mr. Grimes was suffering severe respiratory stress caused by air in his lungs and a collapsing lung. Surgery was performed by the hospital resident, which relieved the problem. After some days, Mr. Grimes was discharged from the hospital. During his stay, Mr. Grimes was visited at the hospital on at least one occasion by the defendant. Thereafter, he visited defendant’s office, located in Flushing, Queens, at defendant’s request, where X rays were taken. Mr. Grimes signed one or more partially completed Blue Shield forms, which were submitted by defendant for payment. As submitted, they indicated that defendant had performed the surgical services and that these services had been performed in defendant’s office, on a date differing from the one on which the surgery was concededly performed. The Blue Shield claim form requested payment in a sum in excess of the amount permitted by the Blue Cross-Blue Shield schedule of payments. The claim filed by defendant was paid in due course.
Upon learning of the claimed services and payment, Mr. Grimes complained to Blue Shield that defendant was not his physician, had never performed the surgery, and was unknown to him except for two visits after the surgery, one in the hospital and one in his office. It appears that neither Mr. Grimes nor his physician, Dr. Balkin, authorized any services by defendant.
Defendant testified before the Grand Jury. He appeared with counsel. His motion papers recite his version of the facts, asserting that he rendered the surgical services in question. According to his testimony and his papers, he was called at his home by a hospital resident for assistance in the emergency under which Mr. Grimes was admitted as a patient. This was his first call from Booth Memorial Hospital since he had been granted privileges at that hospital. He states that because of the distance from his home to the hospital, the emergency precluded his physical presence. Therefore, he directed the surgery over the telephone. He visited the patient later on the same day. He admits the Blue Shield claims were erroneous in various respects, but attributes the errors to his clerical staff.
*59 II.
There is testimony before the Grand Jury from which it could conclude that defendant claimed and received moneys for services not performed by him. Thus, the Grand Jury returned an indictment upon evidence which is legally sufficient to establish that the accused committed the crime of grand larceny. The concededly erroneous statement of the place where and the date on which the services were rendered and the billing and acceptance of moneys in excess of those payable under the agreed fee schedule are relevant on the question of intent to defraud and to commit the crime of grand larceny. Defendant argues that his testimony before the Grand Jury refutes the claims of misconduct. Obviously, the Grand Jury had the prerogative of crediting contrary testimony by other witnesses over the testimony offered by defendant.
III.
Similarly, the evidence is legally sufficient to support the charge of falsifying business records in the first degree. Section 175.10 of the Penal Law, by its plain language, is not limited to employees or others having bookkeeping responsibilities. It applies also to those who supply erroneous information which results in false records.
Section 175.00 of the Penal Law defines the terms "business record” and "enterprise” to encompass the filing of a claim for medical-surgical procedures performed upon a subscriber to the coverage provided by Blue Cross-Blue Shield by a participating physician. The claim was submitted on a form for that purpose and certified as required by Blue Shield. The form is a demand addressed to Blue Shield for the payment of money, in accordance with an accepted schedule of fees, for services performed by the applicant. Since Dr. Linardos’ employees were directed to present such claims upon the forms provided by Blue Shield, and these forms are part of Blue Shield’s permanent records, the entries, if false, falsify business reperds. The forms evidenced and were intended to evidence in the records of Blue Shield its obligation to pay the physician for surgery performed upon a subscriber in accordance with his obligation as a participating physician. Blue Shield relied upon the accuracy of the statements contained therein to make payment. (Cf. People v Smithtown Gen. Hosp., 93 Misc *60 2d 736, where the failure of two orthopedic surgeons, an anesthesiologist and a registered nurse to enter relevant information in two hospital records was held sufficient to warrant an indictment for falsifying business records with an intent to defraud and to conceal the crime of unlawful medical practice.) False records resulting from false information submitted to support a fraudulent claim provide a sufficient basis for indictment under this provision (People v Weinfeld, 65 AD2d 911).
IV.
The court also finds that the indictment, on its face, conforms to the statutory requirements. It fully apprises the defendant of the charges against him and will enable the defendant to prepare a defense.
V.
Defendant’s motion for dismissal of the indictment on the ground of discriminatory enforcement characterizes this case as among the "ghost” surgery cases, or cases where "the billing surgeon did not himself wield the scalpel or deliver the child.” A claim of discriminatory enforcement must be supported by a factual showing of arbitrary enforcement of a given law. Defendant must demonstrate that the public authorities have generally acquiesced in the nonenforcement of a statute and that its prosecution in this instance is impermissibly selective because it is generated by animosity or other illegitimate reason (People v Utica Daw's Drug Co., 16 AD2d 12). The "Sunday Blue Laws” decision (People v Acme Markets, 37 NY2d 326) is the classic illustration of the proof required. The burden of proving such a claim devolves upon the party who makes the allegation and obligates him to show conscious or intentional discrimination or a pattern of discrimination (People v Goodman, 31 NY2d 262; Matter of 303 West 42nd St. Corp. v Klein, 46 NY2d 686, 693). Defendant has failed to meet his burden of coming forward with sworn allegations of fact to support his claim.
VI.
In the moving papers, defense counsel alleges, without contradiction, that immediately prior to the commencement of testimony by the defendant, certain unrecorded colloquies *61 occurred among himself, the District Attorney and the grand jurors themselves. Defendant contends that the failure to record and the nature of the colloquies so prejudice him that the integrity of the Grand Jury proceeding is impaired. In support of his contention, defense counsel enumerates (a) objections voiced by grand jurors to his taking written notes inside the Grand Jury; (b) the attempt by the prosecutor to require him to swear to keep the Grand Jury proceeding secret; (c) the physical discomfort of his position in relation to his client’s seating, making consultation awkward; (d) the questioning of defendant by two Assistant District Attorneys alternately; and (e) the questioning of defendant by at least 10 of the grand jurors, who asked 20-30 questions, allegedly reflecting their personal animosity. The first four items are not recorded in the minutes.
Article 10-A of the Judiciary Law defines the duties of a stenographer appointed by the District Attorney to take and transcribe the testimony given before Grand Juries in the county. Section 325 of the Judiciary Law limits the stenographer’s duty "to take in shorthand or upon a typewriting machine the testimony introduced before such grand juries, and * * * to furnish to the district attorney of such county a full copy of all such testimony as such district attorney shall require”. Additionally, CPL 190.25 mandates that instructions be given to the Grand Jury by its legal advisors, the court and the District Attorney, concerning "the law with respect to its duties or any matter before it” and that such instructions be recorded in the minutes.
In discussing a comparable issue, the court, in People v Percy (45 AD2d 284, affd 38 NY2d 806), points out that, in order to warrant dismissal, the defect in the Grand Jury proceedings must conform with those listed as fatal in CPL 210.35. Indeed, even failure to record legal instructions to the Grand Jury does not automatically mandate dismissal of an indictment.
In People v Brown (87 Misc 2d 403) and in Matter of Reports of Nassau County Grand Jury (87 Misc 2d 453), the defect alleged was the refusal to permit direct questioning of the witness by the grand jurors. In Brown, the court held that the prior off-the-record screening by the District Attorney of such questions for relevance and possible prejudice did not violate the statutory requirement that instructions to the Grand Jury be recorded. In Matter of Reports of Nassau *62 County Grand Jury, the court reached a contrary conclusion, holding that instructions by the District Attorney that grand jurors could not question witnesses directly impaired the integrity of the proceedings by curtailing the prerogative of the grand jurors to make fair and full inquiry.
Here, defense counsel objects to the opposite situation, alleging that the jurors were permitted to ask so many questions of defendant that he was prejudiced by his obligation to respond. Inasmuch as he voluntarily testified, an enlarged opportunity to clarify his position could not inure to his detriment. Unlike Percy (supra), the prosecutor’s instructions here are legally sufficient (People v Calbud, Inc., 49 NY2d 389), and the theory of the prosecution clear. Overall, the presentation to the Grand Jury was fair.
VII.
Defendant alleges various other irregularities and improper, illegal acts in the conduct of the Grand Jury proceedings and in the conduct of the prosecutors and the grand jurors themselves. The court finds the contentions to be without merit and consequently no basis for a dismissal of the indictment. Accordingly, the motion to dismiss the indictment is denied on all of the grounds set forth.
Further, defendant’s motion to dismiss the indictment herein, pursuant to CPL 210.40, is denied. Defendant has failed to set forth the compelling factors, consideration or circumstances referred to in People v Clayton (41 AD2d 204), which clearly demonstrate that conviction or prosecution of the defendant upon the instant indictment would create an injustice.