OPINION OF THE COURT
Duncan S. McNab, J.
Defendant Jacob Rosenbaum has been charged under Rockland County Indictment No. AG-80-171 with 1 count of grand larceny, second degree, 17 counts of grand larceny, third degree, 6 counts of petit larceny and 1 count of commingling personal allowance funds, the latter in violation of section 131 (subd 9, par [b]) of the Social Services Law. The top count of grand larceny, second degree, and 16 of the grand larceny, third degree, counts contained in Counts 3 through 18 involve the alleged theft of certain Supplemental Security Income checks from former residents of the Mountainview Home for Adults in 1978, then operated by defendant. The 17th count of grand larceny, third degree (Count 2 of the indictment) and the 6 petit larceny counts charge defen *502 dont with thefts of specified Social Security checks similarly issued to former residents.
The defendant, by way of motion papers filed on November 19, 1980, has moved for inspection of the Grand Jury minutes and dismissal of the instant indictment, or alternatively, for enumerated items of discovery and a bill of particulars. The dismissal portion of defendant’s motion rests on essentially two arguments, the first being the defense of claim of right contained in subdivision 1 of section 155.15 of the Penal Law.[1] Defendant contends that the Department of Social Services owed him various sums of money well in excess of the amounts the present indictment charges him with stealing which, defendant contends, entitled him to the checks in question here. Secondly, defendant contends that pursuant to certain Department of Social Services guidelines, which defendant failed to specify in his motion papers, there is a “30-.day rule” by which an owner of an adult home may keep open a bed upon discharge of a resident for 30 days beyond the actual discharge date. As a corollary thereto, defendant alleges this purported 30-day rule afforded defendant a lawful claim to take those Supplemental Security Income and Social Security checks which were issued for the month covered by this alleged 30-day “grace period” subsequent to a resident’s actual discharge. Accordingly, defendant urges (1) that the evidence at the Grand Jury was insufficient for an absence of any larcenous intent, and (2) the Grand Jury proceedings were fatally tainted because the Special Prosecutor allegedly withheld favorable testimony as to claim of right and failed to instruct the Grand Jury as to this issue.
Additionally, defendant contends that the instant indictment, and especially Count 25, is defective as being vague and lacking in sufficient specificity so as to *503 identify the charges brought against the defendant and to protect him from future double jeopardy.
Treating the latter claim first, each of the counts of the instant indictment is sufficiently particularized and is supported by adequate facts to satisfy the requirements of CPL 200.50 (subd 7). Defendant’s main contention here focuses on Count 25, which charges defendant with commingling of personal allowance funds in violation of section 131-0 (subd 9, par [b]) of the Social Services Law during the period July 1, 1978 to September 1, 1979. This section provides that “any person who commingles, borrows from or pledges any personal allowance funds required to be held in a separate account shall be guilty of a class A misdemeanor”. In People v Iannone (45 NY2d 589, 599), the Court of Appeals held that “when indicting for statutory crimes, it is usually sufficient to charge the language of the statute unless that language is too broad * * * especially * * * when the crime is one such as this, in which the acts that constitute the crime are many and are spread over a considerable period of time and space.” (Emphasis added.) Such is also the case here. Taken in conjunction with the Special Prosecutor’s consent to provide defendant with a full bill of particulars as to this count, a practice also approved in Iannone, this court would find Count 25 to be just as valid as each of the first 24. So, as to each and every count, defendant’s motion to dismiss for vagueness and lack of specificity must be denied.
Moving on to defendant’s contentions with respect to the so-called 30-day bed hold rule, the Special Prosecutor denies in his answering papers that any such 30-day rule exists. The court also not being aware of any regulation or guideline establishing such a 30-day rule, asked both sides to submit whatever law they had on this question. Pursuant to the court’s request, defendant submitted, in piecemeal fashion, limited portions of the Department of Social Services regulations contained in 18 NYCRR. The court has carefully reviewed these regulations and finds nothing therein to support defendant’s argument. In fact, it appears that the particular sections submitted by de *504 fendant, concerning, inter alia, the discharge and transfer of residents and the temporary absence of a resident, have been taken out of all proper context and are completely irrelevant to the present case. As defendant himself concedes at page 35 of his moving papers, dated November 17, 1980, the Social Security Administration expressly forbids any such 30-day bed hold. Moreover, while referring the court to 18 NYCRR 352.8 and 370.9," defendant failed to provide the court with the accompanying subsections relating to this State’s public assistance program which expressly state that those receiving Supplemental Security Income (SSI) shall not be eligible for home relief or other forms of State public assistance. (See 18 NYCRR 370.4, 370.4 [e], 370.9 [j], 370.11; and, see, 352.29 [g], 352.30 [e].) In effect, the receipt of Supplemental Security Income prevents one from also receiving public assistance from the State. Thus, since each of the alleged larceny counts in the present case charges a stealing of either a Social Security check or an SSI check, the New York State regulations describing what effect the temporary absence of residents from adult homes would have on his or her eligibility for public assistance are irrelevant.
Similarly misplaced, too then, for the same reason, is defendant’s additional argument that the so-called 30-day bed hold, if not expressly written in black and white, is at least a rule of “practice”, relying on a letter written by a staff member of the Rockland County Department of Social Services, submitted as an exhibit attached to his reply papers dated December 15, 1980.
Aside from the fact that this letter speaks only of a two-week hold, and that its veracity was seriously questioned upon oral argument, the overriding fact is that the proof at the Grand Jury fully dispels any “30-day rule” argument, as do the Department of Social Services regulations when read in their proper context.
Beyond the “30-day rule”, defendant also contends that he is entitled to the checks in question based on a claim of right arising from defendant’s “substantial reliance” upon information contained in a civil audit showing out *505 standing moneys allegedly owing to him by New York State. In the first instance, the Special Prosecutor represents that the only audit findings of which he is aware discloses no such money due and owing to defendant. In any event, even if there were, arguendo, such moneys outstanding, such a debt would in no way justify a claim of right.
It has long been the law of this State that “ ‘it is a sufficient defense that the property was appropriated openly and avowedly under a claim of title preferred in good faith, even though such claim is untenable. But this section [section 548 of the then Penal Code, the precursor to today’s theory of claim of right contained in subdivision 1 of section 155.15 of the Penal Law] shall not excuse the retention of the property of another, to offset or pay demand held against him” [Emphasis added.]
“It may well be that if the plaintiff had the lawful possession of [the property] and erroneously but in good faith asserted ownership or a lien thereon, the provisions of this section would relieve him of the charge of larceny in detaining the property”. (Greene v Fankhauser, 137 App Div 124, 133.)
Clearly, lacking any basis in law, be it the so-called 30-day rule or otherwise giving him a good faith claim of right to retain and possess the checks in question, defendant here did not have lawful possession of them. In the absence of such a claim of right, any claimed “offset” is irrelevant, as this court has previously ruled in nursing home cases brought on by the Special Prosecutor wherein defendants were charged with crimes of grand larceny based on the filing of fraudulent expense reports with the New York State Health Department. (See this court’s written decision in People v Wolf [Supreme Ct, Westchester County, Sept. 28, 1976, affd 59 AD2d 547], and cases cited therein, finding defendant guilty of grand larceny after a nonjury trial.)
Finally, defendant contends that he has either repaid, or agreed to repay, some portion of the money allegedly stolen. Even assuming that defendant has made some *506 “paybacks”, it is well settled that making restitution, or having the intention to make restitution of moneys improperly diverted, is no defense to a charge of larceny. (People v Meadows, 199 NY 1; People v Shears, 158 App Div 577.) Moreover, the Grand Jury minutes indicate that by and large such paybacks as were made related to months for which defendant was not indicted in the first instance.
Thus, the proof at the Grand Jury appears legally sufficient to support each and every count charged, and defendant’s motion to dismiss for lack of evidence must be denied.
Moreover, the Special Prosecutor cannot be accused of fatally tainting these Grand Jury proceedings by failing to instruct the Grand Jury as to claim of right. This court would agree with the rationale set forth by Judge Tonetti in People v Karassik (90 Misc 2d 839, 847, 848), that the failure to charge an affirmative defense (there, entrapment) would only represent a denial of due process where there was proof supporting the defense at the Grand Jury so clear and pervasive “that the interests of justice would have been undermined by a failure to so charge”. In contrast, the proof at the Grand Jury in the instant case cannot be characterized as pervasive insofar as claim of right is concerned. Rather, at most, there was testimony from which defendant might wish to attempt to argue a good faith claim of right, resting on a different basis than that previously discussed, strictly limited to but 4 of the 25 counts in this indictment, namely, Counts 6 and 14, charging crimes of grand larceny, third degree, and Counts 16 and 17, charging crimes of petit larceny. There were portions of testimony (which this court is directing the Special Prosecutor to turn over to defendant as possible Brady material in the Brady portion of this decision) which showed that the particular former residents involved in these four counts may actually have been residing at the Mountain View Home for limited portions of time covered by the respective checks allegedly stolen. However, even if, arguendo, one were to allow defendant limited reimbursement for these time *507 periods, there would still be a remaining balance sufficient to sustain each of these four counts. In any event the proof was unequivocal that defendant had no right to cash any of these checks, since each was issued to the particular individual resident regardless of whether any money was owing to defendant or not. Thus, any failure to instruct on claim of right, if error at all, was at worst harmless error.
Above and beyond that, it is noteworthy too, that whether deemed a defense or an affirmative defense the Court of Appeals has only recently held that a Grand Jury need not be instructed on the law with the same degree of precision as a petit jury. (See People v Calbud, Inc., 49 NY2d 389.)
In short, this court is in no way persuaded that the Special Prosecutor failed to provide this Grand Jury with such legal instructions as were “necessary and appropriate” as required by CPL 190.25 (subd 6). Nor has defendant demonstrated to this court that the Special Prosecutor knowingly withheld any evidence which could lend support to defendant’s claim of right argument.

. In People v Chester (50 NY2d 203), the Court of Appeals unanimously found that section 155.15 of the Penal Law was unconstitutional insofar as it explicitly made the issue of claim of right an affirmative defense, for the reason that such characterization impermissibly shifted the burden of proof. By implication, the question of claim of right, in order to satisfy the holding of Mullaney v Wilbur (421 US 684), would now be deemed an ordinary defense.