OPINION OF THE COURT
Herbert Shapiro, J.
The defendant is charged with the crime of murder in the second degree (other charges had been earlier dismissed) by indictment filed December 3, 1981. The matter proceeded to trial in June, 1982 resulting in a hung jury and a consequent mistrial. The case was then moved for retrial and was assigned to this court for such retrial.
Just prior to the commencement of the retrial, the defendant moved, by order to show cause, to dismiss the indictment. It is to that motion that this opinion is addressed.
The motion seeking dismissal urges that such relief is appropriate because the District Attorney failed to resubmit the case to the Grand Jury after the first trial. It is *213 argued that such resubmission was required because two witnesses at the trial gave crucial exculpatory testimony which testimony had not been heard by the Grand Jury which handed up the indictment.* Such testimony, it is urged, should be made available to a Grand Jury and the case reconsidered in its entirety before this defendant is subjected to another trial.
The defendant was charged with the murder of a young man. The body had been discovered at about 9:45 a.m. on May 14, 1979 inside a Cadillac automobile in Ferry Point Park. The discovery was made by a person who then went to call the police, and who, upon returning to the scene at about 10:00 a.m., discovered that the body had been moved some distance away and hidden under an abandoned Volkswagen automobile.
The “crucial” testimony, revealed for the first time at trial through the testimony of witnesses Doris and Ruggiero, was to the effect that they observed and conversed with the defendant during the same period of time that the body was originally discovered and was moved at Ferry Point Park — a location several miles from the location whereat defendant was seen by witnesses Doris and Ruggiero. The time of their observations was verified by time cards kept in the course of their employment. Additionally, it is noteworthy that both witnesses described the defendant’s appearance in a manner essentially inconsistent with one who had moved a bleeding body some 100 feet through a high wet grassy area.
The case made out against the defendant before the Grand Jury and at trial as well, was a purely circumstantial one. Without here reviewing such testimony it is clear that, at best, it was an extremely weak case. Such conclusions are reached after a reading of the Grand Jury and trial minutes.
Support for the above conclusions as to the weakness of the prosecution case is to be found in the conceded fact that the jury at the trial stood 11 to 1 for acquittal and the *214 reservation by the Trial Justice of a decision on a motion to dismiss at the end of the original trial.
The court is well aware that, in general, what evidence is to be presented to a Grand Jury is to be determined by the prosecution. (People v Santoro, 63 NYS2d 615, 619.) The court is also aware that normally the decision as to whether or not a prosecútion is to be undertaken or a presentation is to be made to a Grand Jury is for the prosecutor and not for the court. (People v Siragusa, 81 Misc 2d 368; Matter of McDonald v Sobel, 272 App Div 455.)
However, the court is equally aware that the Grand Jury mechanism was originally developed for the purpose of protecting individuals against the arbitrary abuse of governmental power. (People v Ferrara, 82 Misc 2d 270; People v Rosen, 74 NYS2d 624.) Simply stated, the Grand Jury was to have a dual function — to institute criminal proceedings against an accused based on sufficient proof and to abort criminal proceedings against an accused where the charges were frivolous and insufficient.
Thus, the question here presented. In the light of these companion functions of the Grand Jury and the very peculiar circumstances of this case did the District Attorney have the obligation, after the mistrial was granted, to resubmit the matter to the Grand Jury? And, if the answer be in the affirmative, would the prosecutor be obliged to include in such resubmission the exculpatory testimony of witnesses Doris and Ruggiero? The court answers both questions affirmatively.
The trial Assistant District Attorney quite candidly and commendably stated to the court that had he known of the exculpatory testimony prior to the original Grand Jury presentation he would have made such testimony available to the Grand Jury. Nonetheless, he argues that such action need not now be taken at this point in the judicial process. He argues, in substance, that to do so would disrupt the orderly progress of the judicial process and thereby take control of the Grand Jury mechanism from the District Attorney and open the floodgates with respect to who shall determine what witnesses are to be produced before a Grand Jury.
*215 These arguments are without merit. The court, in granting this application, is not now holding that a similar result would obtain in all cases where exculpatory information is subsequently discovered after the original Grand Jury presentation. Normally such a determination is for the prosecutor to make and no departure from that normal procedure is intended by the instant determination. What is now being held is the limited conclusion that in the particular and most unusual circumstances of this case, such a re-presentation is required.
As indicated, both the proof before the Grand Jury and at trial was purely circumstantial and extremely weak. In such a context what might the impact have been upon the Grand Jury’s deliberations had they heard the exculpatory testimony of Doris and Ruggiero? Is it not likely or, if not, at least reasonably possible that the case against this defendant would have been found insufficient to subject him to trial? The court cannot escape reaching the conclusion that such might well have been the result.
It has been argued, in substance, that if the case against the defendant is so weak why not permit a retrial and enable him to find vindication at the hands of a trial jury. However, if that argument has validity why then the need for a Grand Jury at all? From a defendant’s point of view, a Grand Jury failing to return an indictment is hardly the equivalent of an acquittal after trial. Going to trial presents elements of financial burdens, great mental stress, unpleasant publicity and the ever present possibility of a guilty verdict. The difference is too obvious to require extended discussion.
What is the great evil perceived by the District Attorney in re-presenting this particular case to the Grand Jury? He points to none but rather argues that he has no legal obligation to do so. However, such argument fails since his duty to prosecute is overridden by his duty to see justice done.
Another point raised by the District Attorney in opposition to the motion and which merits discussion is concerned with the defendant’s delay in making this application. There is no question but that this application could *216 have and perhaps should have been earlier made. Nor is there any question but that no acceptable excuse was offered for the delay. However, in the circumstances of this case, the court finds the delay not to be fatal.
It is the court’s view that the obligation to re-present this case was imposed upon the District Attorney at the end of the trial which resulted in the hung jury. At that time he should have been cognizant of the relative weakness of the People’s case and fully aware of the exculpatory testimony of the witnesses Doris and Ruggiero. At that point he should have, even in the absence of prodding by the defendant, re-presented the case. That being so, the delay of the defendant in bringing on this motion becomes insignificant and should not require a denial thereof on that basis.
A last comment, in the light of the prosecutor’s statement that, in effect, this court by granting the motion would be making a finding that the testimony of Doris and Ruggiero is necessarily credible. Clearly that is not so. On re-presentation, the Grand Jury is, of course, free to give such weight, if any, it chooses to give to such testimony. It may well give it little or ho credit and return a new indictment. Be that as it may, this court concludes that the Grand Jury must at least be given the opportunity to hear it.
Accordingly, the motion to dismiss the indictment is granted with leave to the prosecution to re-present the matter to a Grand Jury and that at such re-presentation, if it takes place, the Grand Jury should have the opportunity of hearing, without limitation, the testimony of witnesses Doris and Ruggiero including the “exculpatory” testimony as hereinabove indicated.

 It is clear that the substance of that testimony was unknown to the District Attorney prior to the Grand Jury presentation and, indeed, prior to the original trial. It came out quite unexpectedly for the first time during that trial.