Meyer, J.
(dissenting). In holding that whether the Grand Jury must be instructed concerning the effect of *42 evidence presented to it the person under investigation, a distinction is to be made between exculpatory defenses, which must be charged, and mitigating defenses, which need not be, the majority ignores the common-law history of the Grand Jury, the purpose of allowing a potential defendant to appear before that body and to request that it call other witnesses on his or her behalf, and the substantial prejudice that may result to one indicted for a higher degree of offense than the evidence warrants. I, therefore, dissent.*
Concentrating on the statement in People v Calbud, Inc. (49 NY2d 389,394) that the Grand Jury’s primary function is to “determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution”, the majority overlooks the role of that body, likewise declared in Calbud (49 NY2d, at p 396; accord Matter of Keenan v Gigante, 47 NY2d 160, 168) as a buffer against “unfounded and arbitrary accusations”, or, as the Supreme Court put it, “as a protector of citizens against arbitrary and oppressive governmental action” (United States v Calandra, 414 US 338, 343; see United States v Mandujano, 425 US 564, 571 [plurality opn]).
Unquestioned since the Grand Jury’s return of “Ignoramus” (we know nothing of it) in the Earl of Shaftesbury’s case in 1681 (8 How St Tr 759; Kuh, Grand Jury “Presentment”: Foul Blow Or Fair Play?, 55 Col L Rev 1103, 1107-1109; Edwards, The Grand Jury, pp 28-29), and the similar *43 action of two colonial Grand Juries in 1734 in John Peter Zenger’s case (Kuh, loc cit.; Note, 74 Harv L Rev 590, 591), has been the right of the Grand Jury to nullify the law by refusing to indict notwithstanding the presentation to it of evidence sufficient to sustain an indictment. Not as prominently referred to in the literature, but nevertheless clear, is the fact that the degree of the offense was within the competence of the English Grand Jury as well. Thus, John Somers, Lord High Chancellor of England, states in The Security of Englishmen’s Lives (published in 1681, in relation to the Shaftesbury matter) that the Grand Jury, having heard all available proof, “are carefully to examine the nature of the facts, according unto the rules of the common law, or the express words of the statutes, whereby offences are distinguished, and punishments allotted unto each of them: it is true, that upon hearing the party, or his witnesses, the Petit Jury may acquit or judge the facts in the indictment to be less heinous, or malicious, than they were presented by the Grand Jury, but cannot aggravate them; which being considered, it will easily appear, by the intent and nature of the powers given unto Grand Juries, that they are by their oaths obliged, and their institution, ordained to keep all injustice from entering the first gates of our courts of judicature, and to secure the innocent not only from punishment, but from all disgrace, vexation, expence, or danger” (at pp 80-81 [emphasis supplied]). Referring to a statute providing that no one should be indicted except upon such “proof, as by the Jury, by whom he shall be indicted, shall be thought good, lawful and sufficient to prove him, or them guilty of the said offences”, Somers continued: “Herein is declared, the only true reason of indictments, i.e. the Grand Jury’s judgment that they have such testimonies as they esteem sufficient to prove the party indicted guilty of the crimes whereof he is accused, and whatsoever the indictment doth contain, they are to present no more, or other crimes, than are proved to their satisfaction, as upon oath they declare it is, when they present it” {id., at p 89 [emphasis supplied).
Not surprisingly, because our “grand jury was intended to operate substantially like its English progenitor” (Costello v United States, 350 US 359, 362), similar expressions *44 will be found in Mr. Justice Stephen Field’s 1872 charge to a Grand Jury while on circuit (2 Sawyer 667, 670): “if, in the course of your inquiries, you have reason to believe that there is other evidence, not presented to you, within your reach, which would qualify or explain away the charge under investigation, it will be your duty to order such evidence to be produced”, and in the 1969 holding of the District of Columbia Circuit Court of Appeals in Gaither v United States (413 F2d 1061, 1066) that “The content of the charge, as well as the decision to charge at all, is entirely up to the grand jury — subject to its popular veto, as it were” (emphasis supplied).
The issue does not appear to have been passed upon by a New York appellate court until the present case, and by the same Appellate Division, in dictum, in People v Isla (96 AD2d 789). Trial courts that have confronted the question have held that there is a duty on the prosecutor to instruct the Grand Jury with respect to affirmative defenses (People v Karassik, 90 Misc 2d 839 [entrapment]; People v Smith, NYLJ, March 16, 1976, p 7, col 3 [duress]; see People v Rosenbaum, 107 Misc 2d 501 [claim of right as to taking]; contra People v Brown, 87 Misc 2d 403 [agency, entrapment]), any exceptions to the governing Penal Law provision (People v McWilliams, 96 Misc 2d 648), exculpatory evidence (People v Friedman, 116 Misc 2d 212; People v Ferrara, 82 Misc 2d 270), the degrees of larceny and the relationship of defendant’s actions to his position as executor (People v Mackey, 82 Misc 2d 766), and the alternate actions open to the Grand Jury under CPL 190.60 (see People v Filis, 87 Misc 2d 1067) but not as to its right to request removal of a charge to the Family Court (People v Harris, 100 Misc 2d 736) and not as to the effect of mental disease or defect on criminal responsibility (People v Galuppo, 98 Misc 2d 395). Although those decisions evidence a need for guidance from this court on the question, the majority’s bright line distinction between exculpation and mitigation is, in my view, an improper answer for it ignores the purpose of CPL 190.50 (subds 5, 6) permitting defendant to present his own testimony before the Grand Jury and request that body to call particular witnesses, and in many cases will, contrary to the protective function *45 of the Grand Jury, result in substantial prejudice to the person under investigation.
By giving such a person the right to appear before the Grand Jury on his or her own behalf and to request that body to call others as witnesses, CPL 190.50 emphasizes the Grand Jury’s role as protector against unfounded and arbitrary accusation. The statute has little meaning, however, unless the Grand Jury is informed of the effect to be attributed to the evidence thus placed before it. The failure to do so will, moreover, have very real and important results for the person being investigated.
Thus, under our holding in People v Glover (57 NY2d 61), a defendant is entitled to a lesser included offense instruction only if it is impossible to commit the offense charged in the indictment without by the same conduct committing the lesser offense. On that basis we held Glover not entitled to an instruction on criminal facilitation in the second degree (Penal Law, § 115.05) as a lesser included offense of the charge of criminal sale of a controlled substance in the second degree (Penal Law, § 220.41, subd 1), because it was theoretically possible for a defendant illegally to sell a drug without intending to aid anyone else. Had the evidence on which Glover sought the criminal facilitation instruction been presented by him to the Grand Jury, that body may well have indicted him for both sale and criminal facilitation, or possibly only for the latter offense. Only if they indicted for facilitation alone or for both would facilitation be an option that the petit jury could consider. The point is that the prosecutor is but a legal advisor to the Grand Jury (CPL 190.25, subd 6), that although he “may appropriately explain the law and express an opinion on the legal significance of the evidence * * * [he] should give due deference to its status as an independent legal body” (ABA Standards Relating to The Prosecution Function [2d ed], Standard 3-3.5 [a]), that the ultimate decision on what to charge is for the Grand Jury, not the prosecutor, and that, therefore, the majority paints with much too broad a brush in suggesting that (majority opn, at p 39) “defenses in mitigation * * * ordinarily will involve matters for resolution by the petit jury” rather than the Grand Jury. And the difference between sale (an A-II felony) and facilitation *46 (a class A misdemeanor) being the difference between a maximum sentence of life imprisonment and a one-year maximum, the result to a person accused is far from insignificant or harmless. Indeed, since the failure properly to instruct the Grand Jury results in there being fewer options presented to the petit jury, it may even be that it “raise[s] difficult constitutional questions.” (Keeble v United States, 412 US 205, 213.)
Moreover, should the Grand Jury decide to “ignoramus” the higher and indict only for the lesser degree of crime, the person accused will be affected in many important ways, including the amount of bail (CPL 510.30, subd 2, par [a], cl [viii]), the plea bargaining process (CPL 220.10), the possibility of probation as against imprisonment (see People v Felix, 58 NY2d 156), the fee that will be charged by his attorney, and the media publicity that will be generated by the accusation. Yet it was just such “trouble, expense and anxiety of a public trial before a probable cause is established by the presentment and indictment of a grand jury” (Jones v Robbins, 8 Gray [Mass] 329, quoted in Ex parte Bain, 121 US 1, 12) that the Grand Jury was established to prevent. We should not permit the importance of the Grand Jury to be thus frittered away.
Judges Jasen, Jones and Simons concur with Judge Wachtler; Judge Kaye concurs in result in a separate opinion in which Chief Judge Cooke concurs; Judge Meyer dissents and votes to affirm in another opinion.
Order, insofar as appealed from, reversed, etc.

 Judge Kaye’s concurrence, while agreeing with much that follows, concludes that the evidence did not so clearly support the defense of extreme emotional disturbance as to require instruction to the Grand Jury and that defendant, in effect, waived the presentation of the issue to the jury. Respectfully, I note that both lower courts found the evidence sufficient and that its weight is for the Grand Jury not the courts. As for waiver, I note that, although defendant’s attorney did not mouth the words " xtreme emotional disturbance,” he did notify the Assistant District Attorney that defendant’s stepdaughter had been raped a year before and that she told defendant of the incident, and stated that “it is important that the Grand Jury be informed of this incident and the defendant’s knowledge of it in order that defendant’s state of mind at the time of the shooting be fully understood.” He also requested a charge on manslaughter in the first degree, which as defined by subdivision 2 of section 125.20 of the Penal Law includes causing death “under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance”. The presentation of the evidence to the Grand Jury would serve no purpose unless they were informed of its significance and we should not woodenly insist upon the mouthing of magic words, at the risk of being held to have waived, when the issue is as clearly presented to the prosecutor as it was on this record.